## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS

## DIVISION OF ST. CROIX

BENJAMIN PRENTICE and SOPHIA FRANCIS,

               Plaintiff,

       v.

OFFICEMAX NORTH AMERICA, INC.,

               Defendant.

CIVIL NO. 2009/005

**ACTION FOR DAMAGES**

<u>JURY TRIAL DEMANDED</u>

### <u>PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC</u>

**COME NOW** Benjamin Prentice and Sophia Francis ("Plaintiffs"), by and through their undersigned counsel, and hereby file their Response to Defendant's Statement of Undisputed Facts and Plaintiffs' Counter-Statement of Material Facts.

### <u>DEFENDANT'S STATEMENT OF FACTS</u>

1. **Defendant's Statement of Fact:** Plaintiff Sophia Francis ("Francis") is a citizen of the United States Virgin Islands and is a Black West Indian.[1]

   **Response:** Undisputed.

2. **Defendant's Statement of Fact:** Plaintiff Benjamin Prentice ("Prentice") is a citizen of the United States Virgin Islands and is a Black West Indian.

   **Response:** Undisputed.

**LAW OFFICES OF Rohn & Carpenter, LLC**
1101 King Street
Christiansted
VI 00820-4933
Tel: 340.778.8855
Fax: 340.773.2954
lee@rohnlaw.com

---

[1] For purposes of brevity and clarity, Plaintiffs are not including Defendant's reference to exhibits in Defendant's Statement of Facts.

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND**
**COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO**
**MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 2

3. **Defendant's Statement of Fact:**  OfficeMax hired Francis in December 2006 as a Logistics Supervisor at its retail store ("Store 1368") on St. Croix in the U.S. Virgin Islands.

   **Response:**  Undisputed.

4. **Defendant's Statement of Fact:**  OfficeMax hired Prentice in March 2007 as an Operations Supervisor at Store 1368 on St. Croix in the U.S. Virgin Islands.

   **Response:**  Undisputed.

5. **Defendant's Statement of Fact:**  On June 6, 2008, OfficeMax announced a company-wide retail store reorganization that changed the staffing model of OfficeMax's more than 950 stores nationwide.

   **Response:**  Disputed.  Plaintiffs do not have information about the exact date that

   OfficeMax "announced" its store reorganization or how that reorganization was

   announced.  However, Plaintiffs dispute that they received any information regarding

   OfficeMax's "reorganization" until two weeks before they were terminated.  *See*

   Deposition of Sophia Francis ("Francis Depo.") at **Exhibit 1** at p. 33:5 - 33:18.

6. **Defendant's Statement of Fact**:  The reorganization was detailed in documentation which OfficeMax corporate headquarters provided to and discussed with its retail District Managers and Human Resources partners across the country beginning May 29, 2008.

   **Response**: Disputed.  OfficeMax failed to notify Plaintiffs about the reorganization

   until two weeks before they were terminated.  *See* **Exhibit 1**, Francis Depo. at p. 33:5 -

   33:18.  Plaintiffs have no knowledge of any discussions with "District Managers and

   Human Resources" partners across the country beginning May 29, 2008.  In addition,

   the Manager of the St. Croix OfficeMax, Juliette Bynum, was not invited to participate

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND
COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 3

in a conference call regarding the reorganization placed by her District Manager

because the call was only in Spanish, and she "wouldn't have understood [Spanish]

anyway." *See* Deposition of Nannette Ramirez ("Ramirez Depo."), **Exhibit 10** at

pp. 44-45. Ms. Ramirez was a field Human Resources Manager who provided support

to the St. Croix OfficeMax store.  *See* **Exhibit 10,** Ramirez Depo. at pp. 7, 16.

7. **Defendant's Statement of Fact:**  On June 6, 2008, District Managers convened
conference calls with Store Managers in their district to roll out the reorganization and
provide Store Managers with the tools corporate had prepared for their use.

   **Response:**  Disputed.  OfficeMax has no evidence to support that it communicated

with Juliette Bynum, Store Manager of the St. Croix store, on June 6, 2008.  *See*

Deposition of Rafael Flores ("Flores Depo."), **Exhibit 5** at p. 30 ("Q:  Do you remember

what date that was [that you notified Juliette Bynum]?  A:  The date specifically, no.  I

know it was sometime, I believe, in June.").  Further, OfficeMax, in its Statement of

Facts, contends that Bates No. OMX000555 constitutes the script that Mr. Flores read

to Ms. Bynum.  However, that contention does not match Mr. Flores's testimony;

Mr. Flores contends that the script that he used with Ms. Bynum was bates labeled

OMX000672-673.  *See* **Exhibit 5,** Flores Depo. at p. 33.

   Finally, this statement of fact is misleading.  During the conversation between

Mr. Flores and Ms. Bynum about reorganization, Ms Bynum asked "Are you crazy?"

Deposition of Juliette Bynum, ("Bynum Depo."), **Exhibit 3** at p. 80.  In response,

Mr. Flores "encouraged [Ms. Bynum] to go into the website to get the additional

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND
COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 4

information that she needed to – to convey the information to her team." *See*

**Exhibit 5,** Flores Depo. at p. 35.  Juliette Bynum testified that she participated in a

webinar and received a packet of information regarding how to "go about enforcing this

new restructuring," but she is not sure if the information was in English or Spanish. *See*

**Exhibit 3**, Bynum Depo. at p. 81.

8. **Defendant's Statement of Fact:**  These tools included a Store Manager Timeline and
FAQ Guide, Interview and Selection Process Guides, and scripts and processes for
meeting with and announcing the reorganization to affected associates in their store, for
communicating the purpose of the restructuring, for explaining the application and
interview process for associates eligible to interview for the new positions, for
interviewing and recommending associates for hire into new positions, and for severing
those associates who were not selected for the new positions.

    **Response**:  Disputed.  Although OfficeMax produced the documents referenced

above, OfficeMax has presented no evidence that this particular information was ever

provided to anyone at the St. Croix store.

9. **Defendant's Statement of Fact:**  The store restructure resulted in the elimination of all
of the following positions from every OfficeMax store across the United States as of
June 26, 2008: Assistant Store Manager of Sales, Assistant Store Manager of
Operations, Assistant Store Manager of Logistics, Sales Supervisor, Logistics
Supervisor, and Operations Supervisor.

    **Response**:  Disputed.  Plaintiffs do not dispute that the positions with the titles

listed above were "eliminated."  However, these jobs continued to exist under different

titles without meaningful distinctions. *See* Deposition of Christopher Richardson

("Richardson Depo.") **Exhibit 2**, at p. 75:16 - 75:23; **Exhibit 3**, Bynum Depo. at

pp. 81:25 - 82:25 ("Q: Okay. And was it your understanding at that time that OfficeMax

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND
COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 5

was eliminating all assistant manager and supervisor positions? . . . A: They were

eliminating them as they existed, yes.  Q: And what do you mean by that?  A: They

renamed them. Everything had a different name. I don't remember if they were called

assistants, but there were – it was just different names.")

10. **Defendant's Statement of Fact:** The reorganization also resulted in the creation of five
new positions: a single Assistant Store Manager responsible for the entire store; a
Technology Specialist; a Furniture Specialist; and, for larger volume stores only
(including Store 1368 in St. Croix where Plaintiffs worked), a Merchandise Assistant
Manager and a Store Operations Supervisor.

    **Response**: Disputed.  OfficeMax's contention that it "created" five new positions is

misleading and incorrect.  The new titles that are listed above are merely new names

given to the jobs that were held by Plaintiffs and other supervisors before the

"reorganization."  *See* **Exhibit 2**, Richardson Depo. at p.75:16 - 75:23; **Exhibit 3**,

Bynum Depo. at pp. 81:25 - 82:25; **Exhibit 1**, Francis Depo. at pp. 47-50 ("I saw when

they had the job open – posted on the Internet, I saw the duties.  Then I compared the

duties with the logistics supervisor for the merchandising – assistant merchandising

manager.  That's how I came up with that conclusion; the duties are the same, but just

different titles.")  Importantly, OfficeMax's corporate representative explained that:

"Existing or former assistant managers of logistics and sales would be interviewing for

the assistant store manager or merchandise manager position as they existed.

Previous positions of supervisor of logistics, supervisor of sales, or supervisor of

operations would be interviewing for technology specialist and furniture specialist and

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND
COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 6

operations supervisor positions if they existed."  *See* **Exhibit 2**, Richardson Depo. at

p.75:16 - 75:23.

11. **Defendant's Statement of Fact:** Individuals whose positions were being eliminated as
a result of the reorganization could apply for certain of the newly-created positions,
provided they met two eligibility requirements set forth in the reorganization materials:
employees who (a) had received a final written counseling within the preceding six
months (since December 6, 2007), or (b) were rated as "Does Not Live" the core values
on their 2007 performance review[2] were ineligible to progress through the application
and interview process, and their employment would be terminated on June 26, 2008.

**Response**: Disputed.  Plaintiffs do not dispute that OfficeMax stated the above

requirements to be considered for positions.  Plaintiffs dispute, however, that OfficeMax

properly implemented its own requirements.  Plaintiffs further contend that their

unwarranted discipline that resulted in "ineligibility" was for the purpose of ending their

employment because of Plaintiffs' race and national origin.

In the case of Ms. Francis, OfficeMax contends that she was not eligible to interview

for a post-reorganized position because she had a final written warning for an

"Attendance" problem.  *See* OfficeMax's Human Resources Spreadsheet, **Exhibit 13**

at p. OMX 00765.   Yet, the circumstances surrounding this final warning illustrate

OfficeMax's discriminatory practices.  On March 17, 2008, Ms. Francis's son was ill and

had to be hospitalized.  *See* **Exhibit 1**, Francis Depo. at p. 76.  In conformity with

OfficeMax's attendance policy, Ms. Francis called Ms. Bynum, the store manager, to

tell her about her situation.  *See* **Exhibit 3,** Bynum Deposition at pp. 93-98; *see*

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND
COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 7

*also* Section 5 of OfficeMax's Employee Handbook ("Policies"), **Exhibit 14** at p. OMX 00277 ("Associates are required to provide adequate advanced notice if they will be absent from or arrive late to work."). Ms. Bynum, the St. Croix store manager, told Ms. Francis to "not to worry, to take care of her son." *Id.* When she returned to work, Ms. Francis supplied a medical release for her absence. *See* **Exhibit 7**, Francis Personnel File at p. OMX 00174. Yet, Mary Margaret McMichael, a white Assistant Store Manager, placed a final, written warning in Ms. Francis's file. *Id.* at p. OMX 00171; **Exhibit 3,** Bynum Depo. at p. 26. Ms. McMichael had a practice of "going over" the African-American Store Manager's head and talking "directly to either Puerto Rico or to Chicago corporate." **Exhibit 3,** Bynum Depo. at pp. 98, 128. This final warning was placed in Ms. Francis's file without the St. Croix store manager's knowledge or consent, and it was not signed by the Store Manager. *See* **Exhibit 3,** Bynum Depo. at pp. 93-98. The St. Croix Store Manager disagreed with *any* warning – verbal or written – for Ms. Francis's absence. *See* **Exhibit 3,** Bynum Depo. at p. 101. Importantly, OfficeMax gave this final warning to Ms. Francis despite its own policy of progressive discipline: this circumstance of attending to her son in the hospital was the first (and only) time that she had ever had a warning for a violation of an attendance policy. *See* **Exhibit 3,** Bynum Depo. at pp. 100-101.

---

[2] This qualifier was ultimately modified so that associates whose 2007 performance review reflected a "Does Not Live" rating would be reassessed to account for possible improvement in performance since the time of their 2007 review.

In Mr. Prentice's case, the stated reason for his inability to interview for a post-reorganized position was that he also had a final, written warning for a "policy violation." *See* **Exhibit 13,** OfficeMax Human Resources Spreadsheet at p. OMX 00765. **Yet, no final warning appears in his personnel file**. *See generally,* **Exhibit 8,** Mr. Prentice's Personnel file (showing no final, written warning). OfficeMax, even after searching for this final, written warning for the purposes of this lawsuit, could never find any evidence of this warning. *See* **Exhibit 6**, Bryan Depo. at pp. 57-58. Ms. Bryan, the witness OfficeMax designated to testify about topic No. 26, "all disciplinary action given to each Plaintiff during the course of his and her employment with Defendant and the reason thereof," admitted that she could not even articulate what "policy" Mr. Prentice violated. *See* **Exhibit 6**, Bryan Depo. at pp. 57-58 ("Q: What was the policy violation? A: I do not have that information."); *see also* Dkt. #50, Notice of 30(b)(6) Deposition of OfficeMax North America, Inc. at ¶26; **Exhibit 6**, Bryan Depo. at pp.7-8 (designating Bryan on particular topics, including topic No. 26). The only person Ms. Bryan talked to about the final policy violation was Nanette Ramirez, who didn't know anything about the policy violation, but claimed she relied on Juliette Bynum's reporting that Mr. Prentice was on a final, written warning. *See* **Exhibit 6**, Bryan Depo. at pp. 58-59. Ms. Bynum contradicted Ms. Ramirez and testified that it was her recommendation that Mr. Prentice be rehired for a post-reorganized position. *See* **Exhibit 3,** Bynum Depo. at pp. 110-111.

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND
COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 9

As further evidence of pretext, OfficeMax ignored the supposed final warning they now use as a pretext and allowed Mr. Prentice to interview for positions at OfficeMax after the reorganization. *See* Correspondence regarding Prentice's Post-Reorganization Interview, **Exhibit 15** at pp. OMX 00800-801.  He had already found a new job, but was called to an interview for the post-reorganized OfficeMax. *See* **Exhibit 15** at p. OMX 0800 (misidentifying Mr. Prentice as "Benjamin Sprock").  Indeed, the interviewers indicated in writing that they felt that Mr. Prentice interviewed well and that the interviewers would like to extend the job offer to him. *See* **Exhibit 15** at p. OMX 0800.  OfficeMax noted in its computer database that Mr. Prentice was qualified for the post-reorganization jobs for which he applied.   *See* **Exhibit 17,** Prentice Computer Entry.   Yet, no job offer has ever been extended to Mr. Prentice since his termination in June 2008.  OfficeMax next pretextual attempt for not employing Mr. Prentice was he wanted too high a salary.  *See* **Exhibit 6**, Bryan Depo. at p. 72 ("Q: who told you that Mr. Prentice was seeking a higher salary for the position of operations supervisor than the company was prepared to offer?  A:  As stated earlier, Nannette Ramierez told me.").   Under oath, Ms. Ramirez denied having any knowledge as to why Mr. Prentice was not selected for any post-reorganization position. *See* **Exhibit 10**, Ramirez Depo at p. 61.  Further, OfficeMax never discussed any salary request with Mr. Prentice in his interview. *See, generally,* **Exhibit 4**, Prentice Depo.

12. **Defendant's Statement of Fact:** To identify any associates who were ineligible to progress through the process, Store Managers were specifically advised to "review the

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND
COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 10

impacted associate's personnel file and inform your HR Support Partner as soon as possible of any impacted associates who have a Final Written Warning."

**Response**: Disputed.  There is no evidence that OfficeMax told the St. Croix Store Manager, Juliette Bynum, that she was to "review the impacted associate's personnel file and inform your HR Support Partner as soon as possible of any impacted associates who have a Final Written Warning."  In fact, Juliette Bynum testified that she did not agree with, and may not have even known about, the "final written warning" that appeared in Ms. Francis's file.  *See* **Exhibit 3**, Bynum Depo. at p. 101:12 - 101:18. Further, as explained in SOF 11 above, there is no evidence that Mr. Prentice ever had a final, written warning for anything.

13. **Defendant's Statement of Fact:** The reorganization documentation stressed that the "Selection process **MUST be consistent company wide**."

     **Response**: Disputed.  Plaintiffs do not dispute that OfficeMax created documents that stated that the "Selection process must be consistent company wide," but disputes that OfficeMax has any evidence that this information was shared with anyone in St. Croix or that the selection process was consistent.

14. **Defendant's Statement of Fact:** Store Manager Juliette Bynum ("Bynum") advised Plaintiffs that the company was restructuring and that in late June the positions which they held would be eliminated.

     **Response**: Undisputed.  Again, Plaintiffs note that this communication was not made until two weeks before they were terminated.  *See* **Exhibit 1**, Francis Depo. at p. 33:5 - 33:18.

15. **Defendant's Statement of Fact:** Human Resource Support Partner Nannette Ramirez ("Ramirez") collected from Store Managers required data on the associates in her district whose positions were being eliminated, and entered that data into the company's master spreadsheet.

    **Response**:  Disputed. Nannette Ramirez did not contact the store managers, including the St. Croix Store Manager, but instead collected information housed within computers.  *See* **Exhibit 10**, Ramirez Depo. at p. 48.  Ms. Ramirez admits that she has never reviewed the personnel files for either of the Plaintiffs.  *See* **Exhibit 10**, Ramirez Depo. at p. 17.  Further, the information within the computer was not correct.  *See* Plaintiffs' CSOF ¶ 11, 18, 19.

16. **Defendant's Statement of Fact:** The information Human Resources Support Partner Ramirez received from Store Manager Bynum regarding Prentice was that Prentice was on a final written warning.

    **Response**:  Disputed. As discussed in response to SOF ¶ 11 and in CSOF ¶ 18, there is no evidence that Mr. Prentice ever received a final, written warning. The Store Manager, Juliette Bynum, testified that she did not approve any final warning with respect to Prentice.

17. **Defendant's Statement of Fact:** Francis received a final written warning on March 26, 2008, for failing to report to work as scheduled and failing to communicate a return-to-work date.

    **Response**:  Disputed.  Plaintiffs do not dispute that OfficeMax placed such an improper final written warning in Ms. Francis's personnel file for missing work because of her son's hospitalization in March 2008.  However, Plaintiffs dispute that the final written warning was appropriate or that Ms. Francis received the final, written warning

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND
COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 12

on March 26, 2008.   *See* **Exhibit 3**, Bynum Depo. at p. 101:12 - 101:18 (Plaintiffs

further dispute that the proper person issued the final, written warning because the

Store Manager did not agree with the final, written warning); **Exhibit 1**, Francis Depo.

at pp. 75-83.   As discussed in response to SOF ¶ 11 and CSOF ¶ 12, Ms. Francis's

son was ill and had to be hospitalized.   *See* **Exhibit 1**, Francis Depo. at p. 76.   In

conformity with OfficeMax's attendance policy, Ms. Francis called Ms. Bynum, the

Store Manager, to tell her about her situation.   *See* **Exhibit 3,** Bynum Depo. at pp. 93-

98; *see also* **Exhibit 14,** Policies at p. OMX 00277.   Ms. Bynum told Ms. Francis to "not

to worry, to take care of her son."   **Exhibit 3,** Bynum Depo. at pp. 93-98.   When she

returned to work, Ms. Francis supplied a medical release for her absence.   *See*

**Exhibit 7**, Francis Personnel File at p. OMX 00174.   Yet, Mary Margaret McMichael, a

white Assistant Store Manager, placed a final, written warning in Ms. Francis's file.   *Id.*

at p. OMX 00171; **Exhibit 3,** Bynum Depo. at p. 26.   Ms. McMichael had a practice of

"going over" the African-American Store Manager's head and talking "directly to either

Puerto Rico or to Chicago corporate."   **Exhibit 3,** Bynum Depo. at pp. 98, 128.   This

final warning was placed in Ms. Francis's file without Ms. Bynum's knowledge or

consent, and it was not signed by Ms. Bynum. *See* **Exhibit 3,** Bynum Depo. at pp. 93-

98.   Ms. Bynum disagreed with *any* warning – verbal or written – for Ms. Francis's

absence.   *See* **Exhibit 3,** Bynum Depo. at p. 101.   Importantly, OfficeMax gave this final

warning to Ms. Francis despite its own policy of progressive discipline:    this

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND
COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 13

circumstance of attending to her son in the hospital was the first (and only) time that she

had ever had a warning for a violation of an attendance policy.  *See* **Exhibit 3,** Bynum

Depo. at pp. 100-101.

18. **Defendant's Statement of Fact:** Plaintiffs' employment with OfficeMax was terminated
effective June 25, 2008. At the time of termination, Francis was in the position of
Logistics Supervisor and Prentice was the Sales Supervisor.

     **Response**:  Undisputed.

19. **Defendant's Statement of Fact:** Plaintiffs each filed a Charge of Discrimination with
the Virgin Islands Department of Labor ("DOL") and the U.S. Equal Employment
Opportunity Commission ("EEOC"), alleging race, color, national origin, and other
discrimination.

     **Response**:  Undisputed.

20. **Defendant's Statement of Fact:** Plaintiffs filed this lawsuit asserting six separate
causes of action: (1) race, color, and national origin discrimination under Title VII of
the Civil Rights Act of 1964, as amended ("Title VII"), and 42 U.S.C. Section 1981
("Section 1981"); (2) violation of the laws of the Virgin Islands against discrimination
contained in Title 10 V.I.C. Sections 1-10 and 62, et seq.; (3) breach of the duty of good
faith and fair dealing; (4) wrongful discharge; (5) intentional (or alternatively, negligent)
infliction of emotional distress; and (6) outrageous and reckless actions entitling
Plaintiffs to punitive damages.

     **Response**:  Undisputed.

21. **Defendant's Statement of Fact:** Factual discovery closed October 29, 2010; expert
witness depositions concluded March 30, 2011; the parties' Proposed Joint Final
Pretrial Statement is due June 13, 2011; and trial is set to commence July 18, 2011.

     **Response**:  Disputed. Although this Court ordered factual discovery closed on

October 29, 2010, OfficeMax has produced hundreds of pages of documents since the

close of discovery.  None of those documents that were late-produced were created

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND**
**COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO**
**MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 14

after the discovery cut-off.  Plaintiffs have not had the opportunity to depose OfficeMax concerning those documents.  In addition, there are two discovery motions pending before this court that could affect the parties' discovery.  The outstanding discovery motions before this Court are **Docket Number 96**, Plaintiff Benjamin Prentice's Objection to the Magistrate's Order (Dkt. #95) denying Mr. Prentice's Motion to Compel (Dkt. #67), and **Docket No. 100**, Plaintiff Sophia Francis's Objection to the Magistrate's Order (Dkt. #94) denying Ms. Francis's Motion to Compel (Dkt. #63).  If this Court rules favorably upon Plaintiffs' discovery motions, then Plaintiffs will need to depose OfficeMax regarding those late-produced documents as well.

22. **Defendant's Statement of Fact:** Francis claims her termination was discriminatory because the former Logistics Supervisor position still exists at OfficeMax under a different title – Merchandise Assistant Manager, and that the two positions are the same.

   **Response**:  Disputed.  Plaintiffs agree that the above statement of fact is part of Sophia Francis's claim of discrimination, but disputes that it is her only claim of discrimination.  For a more complete list of Ms. Francis's discrimination claims, see Plaintiffs' response to SOF ¶ 24.

23. **Defendant's Statement of Fact:** Francis knows no one who has obtained the Logistics Supervisor position since June 26, 2008, and she has no information to support her belief that the position still exists.

   **Response**:  Disputed.  Plaintiffs agree that Sophia Francis knows no one who took over the position of "Logistics Supervisor," because that position had been renamed.  Ms. Francis knows that someone took over the duties of the Logistics Supervisor

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND**
**COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO**
**MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 15

position, which has been renamed "Merchandise Assistant Manager" since she was

terminated on June 26, 2008, because she has visited the store and observed white

and Hispanic employees performing the duties that she performed as Logistics

Supervisor.  *See* **Exhibit 1**, Francis Depo. at pp. 48-50; *see also* Richardson Depo.,

**Exhibit 2**, at p.75:16 - 75:23.  After the close of discovery, OfficeMax produced the

pay records of certain St. Croix employees.  These pay records reveal that the following

employees filled the following positions and made the following salaries:  (1)  Kelly

Truelove (white, non-Hispanic), Merchandise Assistant Manager, $19.23 per hour;

(2) Seth Wilcoxon (white, non-Hispanic), Merchandise Assistant Manager, $18.27 per

hour; (3) Miguel Antonio (white, Hispanic), Furniture Specialist, $9.50 per hour;

(4) Michele Olson (white, non-Hispanic), Store Operations Supervisor, $13.00 per

hour; (5) Alicia Gilbert (white, non-Hispanic), non-supervisory Store Associate,

$7.90 per hour. *See* **Exhibit 18**, Employee Records of Post-Reorganization Employees

at pp. OMX 001868-1891.  Plaintiffs have sought the identity of all employees who took

over Plaintiffs' duties, including through 30(b)(6) depositions (Dkt. #50), and written

interrogatories and document requests (both of which are subject to motions to compel

pending before this Court as Dkt. # 96 and #100), OfficeMax has failed to respond to

these discovery requests.  The failure of OfficeMax to identify the new employees is the

subject of Plaintiffs' 56(d) Motion for Continuance, filed with this pleading.

24. **Defendant's Statement of Fact:** The only basis for Francis' belief that she was
discriminated against based on her color or race is that, a couple weeks following her

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND
COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 16

termination, she visited Store 1368 and saw only Hispanics and Caucasians working in the store. Francis had no knowledge of the positions these Hispanic and Caucasian individuals held, and had no knowledge of whether these individuals were OfficeMax associates permanently assigned to Store 1368. Francis did not know what former employees these Hispanic and Caucasian associates replaced, if any.

**Response**:  Disputed.   Plaintiffs dispute that Ms. Francis is limited to her own

legal conclusions.  In Ms. Francis's deposition, OfficeMax asked questions about the

basis of her discrimination claims, and counsel objected on the ground that it called for

a legal conclusion.  *See* **Exhibit 1,** Francis Depo. at p. 51 ("Q:  In the Complaint that

you have before you, do you assert any other claim other than wrongful discharge?

Ms. Carpenter: Objection. The Complaint speaks for itself.  The Complaint alleges what

Complaint alleges.")  As is more fully discussed in Plaintiffs' Counter-Statement of Facts

below, Ms. Francis bases her claim of employment discrimination on at least the

following:

- During her employment, OfficeMax paid white and Hispanics more money

  than they paid Ms. Francis for similar work, who made only $7.50 per hour.

  CSOF ¶ 8-9.  During the time that Ms. Francis worked for OfficeMax, her

  store manager acknowledged that OfficeMax underpaid Ms. Francis, and

  attempted to remedy the pay disparity. *Id.*  Yet, Ms. Francis's (and her store

  manager, Ms. Bynum's) requests were denied. *Id.*   After the close of

  discovery, OfficeMax produced the pay records of certain St. Croix

  employees.  These pay records reveal that the following employees made

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND**
**COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO**
**MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 17

more money than Plaintiffs: (1) Kelly Truelove (white, non-Hispanic), Merchandise Assistant Manager, $19.23 per hour; (2) Seth Wilcoxon (white, non-Hispanic), Merchandise Assistant Manager, $18.27 per hour; (3) Miguel Antonio (white, Hispanic), Furniture Specialist, $9.50 per hour; (4) Michele Olson (white, non-Hispanic), Store Operations Supervisor, $13.00 per hour; (5) Alicia Gilbert (white, non-Hispanic), non-supervisory Store Associate, $7.90 per hour.  *See* **Exhibit 18**, Employee Records of Post-Reorganization Employees at pp. OMX 001868-1891.  After this lawsuit was filed, OfficeMax also revealed a 2008 pay scale, which showed that the minimum range for a middle-level supervisory employee in the lowest pay market should have received $8.65 per hour.  *See* **Exhibit 9** at p. OMX001843.

- As discussed above in response to OfficeMax's Statement of Facts No. 17, Ms. Francis claims that the final, written warning that she was given after attending to her son while he was in the hospital was discriminatory.  *See also* Plaintiffs' CSOF ¶ 12.

- OfficeMax's failure to provide Ms. Francis with 2007 and 2008 performance appraisals, as is more fully discussed in Plaintiffs' Counter-Statement of Facts Nos. 11 and 20, constituted discriminatory treatment and was served as pretext for her dismissal.  CSOF ¶¶ 11, 20.

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND
COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 18

- As is more fully discussed in Plaintiffs' Counter-Statement of Facts Nos. 22-30, after OfficeMax terminated Ms. Francis, OfficeMax Corporate insisted that the St. Croix store manager repeatedly call the only white employee who had been terminated to ask her to reapply. CSOF ¶¶ 22-30. The corporate office ignored Ms. Francis. CSOF ¶¶ 22-30.

- The St. Croix store as a whole was treated in a discriminatory fashion because their management, located in Puerto Rico, treated the non-Spanish speaking employees differently than the English Speaking employees. *See* CSOF ¶¶ 2, 4, 6.

- Ms. Francis further contends that the discriminatory treatment of Benjamin Prentice and other "local" applicants is further evidence of OfficeMax's discriminatory practices. CSOF ¶¶ 5, 14-19.

- OfficeMax's failure to hire Ms. Francis, even to this day, constitutes a discriminatory practice. As OfficeMax's corporate representative testified, there is no practice or procedure that prevents a terminated employee from being rehired after the reorganization process was completed. *See* **Exhibit 2**, Richardson Depo. at pp. 93-95. Ms. Francis applied for a number of positions, including a "store associate," which would have constituted a demotion for her but for which she was clearly qualified. *See* **Exhibit 1**, Francis Depo. at p. 36. Importantly, OfficeMax stated in its own internal

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND
COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 19

> documents that Ms. Francis was qualified for the Assistant Store Manager
>
> Position.  *See*  **Exhibit 15**, Screen Print from OfficeMax's personnel
>
> tracking system at p. OMX 001853.

25. **Defendant's Statement of Fact:** Francis admits that the new Merchandise Assistant Manager position was responsible for hiring and firing, and held keys for opening and closing the store, which were not functions Francis previously had performed in the Logistics Supervisor position.

> **Response**:   Disputed.  The Logistics Supervisor position (held by Ms. Francis) and
>
> the Merchandise Assistant Manager position are the same in all material respects.
>
> *See* **Exhibit 2**, Richardson Depo. at p.75:16 - 75:23; **Exhibit 3**, Bynum Depo. at
>
> pp. 81:25 - 82:25; **Exhibit 1**, Francis Depo. at pp. 47-50 ("I saw when they had the
>
> job open – posted on the Internet, I saw the duties.  Then I compared the duties with the
>
> logistics supervisor for the merchandising – Assistant Merchandising Manager.  That's
>
> how I came up with that conclusion; the duties are the same, but just different titles.")
>
> Importantly, OfficeMax's corporate representative explained that:  "Existing or former
>
> assistant managers of logistics and sales would be interviewing for the assistant store
>
> manager or merchandise manager position as they existed.  Previous positions of
>
> supervisor of logistics, supervisor of sales, or supervisor of operations would be
>
> interviewing for technology specialist and furniture specialist and operations supervisor
>
> positions if they existed."   *See* **Exhibit 2**, Richardson Depo. at p.75:16 - 75:23.
>
> Therefore, although there were a few, nominal new duties in the "new" position, those
>
> new duties were not significant in the eyes of OfficeMax.  Importantly, OfficeMax stated

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND
COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 20

in its own internal documents that Ms. Francis was qualified for the Assistant Store

Manager Position.  *See* **Exhibit 15**, Screen Print from OfficeMax's personnel tracking

system at p. OMX 001853.

26. **Defendant's Statement of Fact:** Francis claims that the Hispanics and Caucasians
received higher wages (including housing, transportation, and a per diem) than she did,
but admits her opinion stems from information supplied to her by Prentice, whose
information allegedly came from some nonmanagerial OfficeMax associate.  Francis
has no personal knowledge of the hourly wages or other compensation the Hispanic
and Caucasian employees received.

   **Response**:   Disputed.  During her time at OfficeMax, Ms. Francis noted that she

was being paid less than her peers.  *See* **Exhibit 1**, Francis Depo. at pp. 105-106.  On

pay days, she would see a log of every person's pay.  *See id.*  She could compare her

color to the color of the employee with higher pay and see that she was being paid

less. *See id.* Further, OfficeMax was aware of the pay inequity for Ms. Francis.  At

a minimum, Ms. Francis was paid $1 less per hour than Benjamin Francis, who

made $8.50 per hour.  *See* **Exhibit 4**, Prentice Depo. at p. 180.  As Mary Elizabeth

Bryan, an OfficeMax designated corporate representative, testified, that Operations

Supervisors and Logistics Supervisors were paid the "same thing, same positions."  *See*

Deposition of Mary Elizabeth Bryan ("Bryan Depo."), **Exhibit 6** at p. 153.  In addition,

OfficeMax has testified that it provided housing, transportation, and a per diem to its

Hispanic and white non-Virgin Island employees after Plaintiffs' termination.  *See*

**Exhibit 5**, Flores Depo. at pp. 69-77. After the close of discovery, OfficeMax produced

the pay records of certain St. Croix employees.  These pay records reveal that the

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND**
**COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO**
**MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 21

following employees made more money than Plaintiffs: (1) Kelly Truelove (white, non-

Hispanic), Merchandise Assistant Manager, $19.23 per hour; (2) Seth Wilcoxon (white,

non-Hispanic), Merchandise Assistant Manager, $18.27 per hour; (3) Miguel Antonio

(white, Hispanic), Furniture Specialist, $9.50 per hour; (4) Michele Olson (white,

non-Hispanic), Store Operations Supervisor, $13.00 per hour; (5) Alicia Gilbert

(white, non-Hispanic), non-supervisory Store Associate, $7.90 per hour. *See*

**Exhibit 18**, Employee Records of Post-Reorganization Employees at

pp. OMX 001868-1891.

27. **Defendant's Statement of Fact:** Francis has no knowledge of reasons behind
differences in pay.

    **Response**:  Disputed.  During her time at OfficeMax, Ms. Francis noted that she

was being paid less than her peers. *See* **Exhibit 1**, Francis Depo. at pp. 105-106.  On

pay days, she would see a log of every person's pay. *See id.*  She could compare her

color to the color of the employee with higher pay and see that she was being paid less.

*See id.* Further, OfficeMax was aware of the pay inequity for Ms. Francis. At a

minimum, Ms. Francis was paid $1 less per hour than Benjamin Francis, who made

$8.50 per hour. *See* **Exhibit 4**, Prentice Depo. at p. 180.  As Mary Elizabeth Bryan,

an OfficeMax designated corporate representative, testified, that operations

supervisors and logistics supervisors were paid the "same thing, same positions."

*See* Deposition of Mary Elizabeth Bryan ("Bryan Depo."), **Exhibit 6** at p. 153.  Yet, Ms.

Bynum attempted to rectify the pay disparity and get Ms. Francis a raise. *See* **Exhibit**

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND
COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 22

**1**, Francis Depo. at p. 69-70.  However, despite being told about the pay disparity,

Mr. Torres denied Ms. Francis a raise.  *See* **Exhibit 7**, Excerpts from Sophia Francis's

personnel file at OMX 00177.  Even through the time of her discharge, Ms. Francis's

supervisor continued to promise her a "big raise."  *See* **Exhibit 1**, Francis Depo. at

pp. 69-72.  After the close of discovery, OfficeMax produced the pay records of

certain St. Croix employees.  These pay records reveal that the following employees

made more money than Plaintiffs:   (1)   Kelly Truelove (white, non-Hispanic),

Merchandise Assistant Manager, $19.23 per hour; (2) Seth Wilcoxon (white,

non-Hispanic), Merchandise Assistant Manager, $18.27 per hour; (3) Miguel Antonio

(white, Hispanic), Furniture Specialist, $9.50 per hour; (4) Michele Olson (white,

non-Hispanic),   Store   Operations   Supervisor,   $13.00   per   hour;   (5) Alicia

Gilbert (white, non-Hispanic),  non-supervisory Store Associate,  $7.90 per hour.

*See* **Exhibit 18**, Employee Records of Post-Reorganization Employees at

pp. OMX 001868-1891.

28. **Defendant's Statement of Fact:** Francis has no knowledge of any other associates'
qualifications, educational background, retail experience, or credentials.

**Response**:   Disputed.  Ms. Francis has full, personal knowledge of Mr. Prentice's

qualifications, educational background, retail experience, and credentials, and he was

paid $1 more per hour than she was.  Further, at this point in the litigation, Ms. Francis

has  been  provided  the  credentials  and  other  information  about  various  other

employees of OfficeMax.

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND
COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 23

29. **Defendant's Statement of Fact:** Francis contends that the fact she was not selected
for the Associate position for which she applied *outside* of the reorganization process
was discriminatory.

  **Response**:   Undisputed.   However, Plaintiffs dispute that they are limited to this

  fact or that it is important.   OfficeMax's failure to hire Ms. Francis, even to this day,

  constitutes a discriminatory practice.   As OfficeMax's corporate representative

  testified, there is no practice or procedure that prevents a terminated employee from

  being rehired after the reorganization process was completed.   *See* **Exhibit 2**,

  Richardson Depo. at pp. 93-95.  Ms. Francis applied for a number of positions, including

  a "store associate," which would have constituted a demotion for her.  *See* **Exhibit 1**,

  Francis Depo. at p. 36.  Importantly, OfficeMax stated in its own internal documents that

  Ms. Francis was qualified for the Assistant Store Manager Position.  *See* **Exhibit 15**,

  Screen Print from OfficeMax's personnel tracking system at p. OMX 001853.

30. **Defendant's Statement of Fact:** Francis believes that her final written warning was
discriminatory, though it did not constitute race or national origin discrimination, and
perhaps not even discrimination based on color.

  **Response**:   Disputed.   The final warning was discriminatory based on color and

  national origin.  Francis's final, written warning arose out of her absence that started on

  March 17, 2008, when Ms. Francis's son was ill and had to be hospitalized.  *See*

  **Exhibit 1**, Francis Depo. at p. 76.  In conformity with OfficeMax's attendance policy, Ms.

  Francis called Ms. Bynum, the African-American store manager, to tell her about her

  situation.   *See* **Exhibit 3,** Bynum Deposition at pp. 93-98; *see also* Section 5

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND
COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 24

of OfficeMax's Employee Handbook ("Policies"), **Exhibit 14** at p. OMX 00277 ("Associates are required to provide adequate advanced notice if they will be absent from or arrive late to work."). Ms. Bynum told Ms. Francis "not to worry, to take care of her son." *Id.* When she returned to work, Ms. Francis supplied a medical release for her absence. *See* **Exhibit 7**, Francis Personnel File at p. OMX 00174. Yet, Mary Margaret McMichael, the white Assistant Store Manager, improperly and discriminatorily placed a final, written warning in Ms. Francis's file even though she had not violated company policy.[3] *Id.* at p. OMX 00171; **Exhibit 3,** Bynum Depo. at p. 26. Ms. McMichael had a practice of "going over" the African-American store manager's head and talking "directly to either Puerto Rico or to Chicago corporate." **Exhibit 3,** Bynum Depo. at pp. 98, 128. This final warning was placed in Ms. Francis's file without the St. Croix Store Manager's knowledge or consent, and it was not signed by the Store Manager. *See* **Exhibit 3,** Bynum Depo. at pp. 93-98. The St. Croix Store Manager disagreed with *any* warning – verbal or written – for Ms. Francis's absence as it was not warranted. *See* **Exhibit 3,** Bynum Depo. at p. 101. Importantly, OfficeMax improperly and discriminatorily gave this final warning to Ms. Francis despite its own policy of progressive discipline: this circumstance of attending to her son in the hospital was the first (and only) time that she had ever had

---

[3] This is the same white Assistant Manager that Defendant repeatedly sought to be contacted to convince her to apply to be rehired in the "reorganization" when none of the black employees were sought out for rehire.

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND
COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 25

a warning for a violation of an attendance policy. *See* **Exhibit 3,** Bynum Depo. at

pp. 100-101.

31. **Defendant's Statement of Fact:** Prentice's only basis for his discrimination claim is his
termination.

    **Response**:   Disputed.  Plaintiffs dispute that Mr. Prentice is limited to his own legal

conclusions.  In Mr. Prentice's deposition, OfficeMax asked questions about the basis of

his discrimination claims, and counsel objected on the ground that it called for a legal

conclusion.  *See* **Exhibit 4**, Prentice Depo. at pp. 67-68.  As is more fully discussed in

Plaintiffs' Counter-Statement of Facts below, Mr. Prentice bases his claims of

employment discrimination on *at least* the following:

- As discussed above in response to SOF ¶ 16, OfficeMax contends that

  Mr. Prentice was ineligible for rehire because he had a final, written warning.

  This statement was false and served as a pretext for discrimination. There is

  no evidence, other than the unsubstantiated spreadsheet that Mr. Prentice

  ever received a final, written warning.   No final warning appears in

  Mr. Prentice's personnel file.  *See* **Exhibit 8**, Mr. Prentice's Personnel file

  (showing no final, written warning).  OfficeMax, even after searching for this

  final, written warning for the purposes of this lawsuit, could never find any

  evidence of this warning.  *See* **Exhibit 6**, Bryan Depo. at pp. 57-58.

  Ms. Bryan, the witness OfficeMax designated to testify about "all disciplinary

  action given to each Plaintiff during the course of his and her employment

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND
COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 26

with Defendant and the reason thereof," admitted that she could not even articulate what "policy" Mr. Prentice violated.   *See* **Exhibit 6**, Bryan Depo. at pp. 57-58 ("Q: What was the policy violation? A: I do not have that information."); *see also* Dkt. #50, Notice of 30(b)(6) Deposition of OfficeMax North America, Inc. at ¶ 26; **Exhibit 6**, Bryan Depo. at pp. 7-8 (designating Bryan on particular topics, including topic No. 26).  The only person the 30(b)(6) deponent talked to about the final policy violation was Nanette Ramirez, who didn't know anything about the policy violation, but claimed she relied on Juliette Bynum's reporting that Mr. Prentice was on a final, written warning.  **Exhibit 6**, Bryan Depo. at pp. 58-59. Ms. Bynum testified that it was her recommendation that Mr. Prentice be rehired for a post-reorganized position which she could not have recommended if he had a final warning.  *See* **Exhibit 3,** Bynum Deposition at pp. 110-111.

- On May 15, 2007, OfficeMax reassigned Mr. Prentice from Operations Supervisor to Sales Supervisor.  *See* **Exhibit 4**, Prentice Depo. at p. 49.  The reason he was given for the move was that he had not completed his OfficeMax University.  However, his fellow Operations Supervisor, Darrette Serrano (Hispanic), was allowed to perform her duties, even though she had also not completed her OfficeMax University work.  *See* **Exhibit 4**, Prentice Depo. at pp. 74-83.   On August 10, 2007, after Mr. Prentice

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 27

complained about the demotion in writing, OfficeMax returned Mr. Prentice to Operations Supervisor.  *See* **Exhibit 4**, Prentice Depo. at pp. 74-83. On December 27, 2007, Mr. Prentice was once again moved from Operations Supervisor to Sales Supervisor as a result of an audit completed by a Caucasian male from the States.  *See* **Exhibit 3**, Bynum Depo. at pp. 42-47.  He was replaced by Dorcus Barbeneaux, a light-skinned woman from Puerto Rico.  *See* **Exhibit 3**, Bynum Depo. at pp. 71-72.

- OfficeMax's failure to provide Mr. Prentice with a 2008 performance appraisal, as is more fully discussed in Plaintiffs' Counter-Statement of Facts Nos. 20, constituted discriminatory treatment and was served as a pretext for his dismissal.  CSOF ¶¶ 11, 20.

- As is more fully discussed in Plaintiffs' Counter-Statement of Facts Nos. 22-30, after OfficeMax terminated Mr Prentice, OfficeMax Corporate insisted that the St. Croix Store Manager repeatedly call the only white employee who had been terminated to ask her to reapply.  CSOF ¶¶ 22-30.  In contrast, the corporate office failed to communicate at all with Mr. Prentice, even after it interviewed him for post-reorganization jobs.  CSOF ¶¶ 22-30.

- The St. Croix store as a whole was treated in a discriminatory fashion because their management, located in Puerto Rico, treated the non-Spanish

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND
COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 28

speaking employees differently than the English Speaking employees.  *See*
CSOF ¶¶ 2, 4, 6.

- The discriminatory treatment of Sophia Francis and "local" applicants is
  further evidence of OfficeMax's discriminatory practices.  CSOF ¶¶ 5-12.

- OfficeMax tacitly acknowledges that Mr. Prentice did not actually have
  a disqualifying final warning as it allowed Mr. Prentice to interview for
  positions at OfficeMax after the reorganization. *See* Correspondence
  regarding Prentice's Post-Reorganization Interview, **Exhibit 15** at
  pp. OMX 00800-801. Mr. Prentice had already found a new job, but was
  called to an interview for the post-reorganized OfficeMax. *See* **Exhibit 15**
  at p. OMX 0800 (misidentifying Mr. Prentice as "Benjamin Sprock").  Indeed,
  the interviewers indicated in writing that they felt that Mr. Prentice
  interviewed well and that the interviewers wanted to extend the job offer to
  him. *See* **Exhibit 15** at p. OMX 0800. However, as a result of the
  discrimination against local black West Indian workers, he was not offered
  either position he sought - Store Operations Manager or Furniture Specialist -
  which remained open for months despite Mr. Prentices' favorable interview
  having the qualifications and experience and desire of the St. Croix store to
  give the position to him.  *See* **Exhibit 15**, Emails regarding Mr. Prentice's
  Interview ("We would like to re-hire associate Benjamin [Prentice] into the

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND
COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 29

position of Supervisor of Store Operations.  What rate can I offer him?").
These positions were instead given to Michele Olson, white, and Miguel
Antonio, Hispanic.  *See* **Exhibit 18**, Employee Records of Post-
Reorganization Employees at p. OMX 001878 to 1886.  When confronted
with this discrimination, OfficeMax attempted to falsely claim it failed to offer
Mr. Prentice the position because Mr. Prentice demanded too high a salary.
*See* **Exhibit 6**, Bryan Depo. at p. 72 ("Q:  who told you that Mr. Prentice was
seeking a higher salary for the position of operations supervisor than the
company was prepared to offer?  A:  As stated earlier, Nannette Ramierez
told me.").  Under oath, Ms. Ramirez denied having any knowledge as to why
Mr. Prentice was not selected for any post-reorganization position. *See*
**Exhibit 10**, Ramirez Depo at p. 61.  Further, OfficeMax never discussed any
salary request with Mr. Prentice in his interview. *See, generally,* **Exhibit 4**,
Prentice Depo.

- OfficeMax's failure to hire Mr. Prentice, even to this day, constitutes a
  discriminatory practice.  As OfficeMax's corporate representative testified,
  there is no OfficeMax practice or procedure that prevents a terminated
  employee from being rehired after the reorganization process was
  completed.  *See* **Exhibit 2**, Richardson Depo. at pp. 93-95.  Mr. Prentice
  applied for a number of positions post-reorganization, and OfficeMax stated

in its own internal documents that Mr. Prentice was qualified for the Supervisor of Store Operations and Furniture Store Specialist positions. *See* **Exhibit 16**, Screen Print from OfficeMax's personnel tracking system at pp. OMX 001860-1863. OfficeMax failed to hire him while hiring whites and Hispanics. These positions were instead given to Michele Olson, white, and Miguel Antonio, Hispanic. *See* **Exhibit 18**, Employee Records of Post-Reorganization Employees at p. OMX 001878 to 1886.

32. **Defendant's Statement of Fact:** Prentice contends that OfficeMax's new position of Store Operations Supervisor was the same as a combination of the previous Sales Supervisor and Operations Supervisor positions he filled during his tenure at OfficeMax.

    **Response**:  Undisputed.

33. **Defendant's Statement of Fact:** Prentice admits that the new Store Operations Supervisor position carried more responsibility than the prior Sales Supervisor and Operations Supervisor positions he held.

    **Response**:  Disputed. The Sales Supervisor and Operations Supervisor positions (held by Mr. Prentice) and the Store Operations Supervisor position are the same in all material respects. *See* **Exhibit 2**, Richardson Depo. at p.75:16 - 75:23; **Exhibit 3**, Bynum Depo. at pp. 81:25 - 82:25. Importantly, OfficeMax's corporate representative explained that: "Previous positions of . . . Supervisor of Sales, or Supervisor of Operations would be interviewing for Technology Specialist and Furniture Specialist and Operations Supervisor positions . . . ." *See* **Exhibit 2**, Richardson Depo. at p. 75:16 - 75:23. Therefore, although there were a few, nominal new duties in the "new" position,

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 31

those new duties were not significant in the eyes of OfficeMax.  Importantly, OfficeMax

stated in its own internal documents that Mr. Prentice was qualified for the Supervisor of

Store Operations and Furniture Store Specialist positions. *See* **Exhibit 16**, Screen Print

from OfficeMax's personnel tracking system at p. OMX 001860-1863.

34. **Defendant's Statement of Fact:** Prentice claims that because he was advised his position was being eliminated, and following his termination he observed Hispanics and Caucasians in the store, performing the same functions he had previously performed, his termination constituted race, color, and national origin discrimination.

   **Response**:  Disputed.  Prentice denies his claims of discrimination are limited to

this fact.  For a more full listing of the actions he believes are discriminatory, see his

response to SOF ¶ 31, which is fully incorporated by reference here.

35. **Defendant's Statement of Fact:** Prentice did not know the names or positions of the Hispanics and Caucasian associates working at Store 1368 following the reorganization, and did not know whether those associates were permanently assigned to Store 1368.

   **Response**:  Disputed that this fact is important. During discovery, Plaintiffs

determined that OfficeMax hired two Caucasian males, Seth Wilcoxon and Stephen

Schawl, immediately after the reorganization to do supervisor-level duties.  *See*

**Exhibit 3**, Bynum Depo. at pp. 116-117.  OfficeMax has not identified exactly which

position Mr. Schawl held, but he served as an Assistant Manager.  *See* **Exhibit 5**,

Flores Depo. at pp. 43-46.  OfficeMax also hired Kelly Truelove, a Caucasian woman, to

work as the Merchandise Assistant Manager.  *See* **Exhibit 3**, Bynum Depo. at pp. 117-

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND
COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 32

118; **Exhibit 18**, Employee Records of Post-Reorganization Employees at
pp. OMX 001868-1872.

OfficeMax hired Miguel Antonio, a Hispanic, for the Furniture Specialist position.
*See* **Exhibit 6**, Bryan Depo. at p. 99.  OfficeMax hired Michele Olson, a Caucasian
woman, for the Store Operations Supervisor Position.  *See* **Exhibit 18**, Employee
Records of Post-Reorganization Employees at pp. OMX 001882-1886.

36. **Defendant's Statement of Fact:** When asked for evidence to support his belief that
employees working at Store 1368 following Prentice's termination received higher
wages, housing, transportation, and a per diem, Prentice admitted that anything he
knew about higher wages was based on rumor.

**Response**:   Disputed.  This "statement of fact" implies that Mr. Prentice has no
evidence that post-reorganization employees at the St. Croix store made more money
than he did.  In fact, Plaintiffs have – but are not limited to – the following evidence that
the post-reorganization employees made more money than they did:

- After the close of discovery, OfficeMax produced the pay records of certain
St. Croix employees.  These pay records reveal that the following employees
made more money than Plaintiffs:  (1)  Kelly Truelove (white, non-Hispanic),
Merchandise Assistant Manager, $19.23 per hour; (2) Seth Wilcoxon (white,
non-Hispanic), Merchandise Assistant Manager, $18.27 per hour; (3) Miguel
Antonio (white, Hispanic), Furniture Specialist, $9.50 per hour; (4) Michele
Olson (white, non-Hispanic), Store Operations Supervisor, $13.00 per hour;
(5) Alicia Gilbert (white, non-Hispanic), non-supervisory Store Associate,

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND
COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 33

$7.90 per hour.  *See* **Exhibit 18**, Employee Records of Post-Reorganization Employees at pp. OMX 001868-1891.

- Also after the close of discovery, OfficeMax produced its 2008 hourly structures chart.  *See* **Exhibit 9** at p. OMX 01843.  This chart demonstrates that both Plaintiffs – who would have fallen into the middle or top supervisory category – made less than the minimum hourly rate for the minimally rated store.  *See* **Exhibit 9** at p. OMX 01843.

- OfficeMax admitted that it provided post-reorganization employee's hired for the St. Croix store with airfare, hotel, and transportation.  *See* **Exhibit 5**, Flores Depo. at pp. 69-77.  This practice of bringing in employees from off-island was "very expensive."  *See* **Exhibit 5**, Flores Depo. at p. 77.

- Additionally, it is disingenuous for OfficeMax to raise Plaintiffs' alleged lack of knowledge regarding pay to other employees.  As discussed in Plaintiffs' Rule 56(d) Motion that it filed with its response to OfficeMax's Motion for Summary Judgment, Plaintiffs have repeatedly sought the information regarding the identity of other employees and the positions that they held; and information about the race, ethnicity, and pay of those employees.  To date, OfficeMax has failed to fully comply with those requests.  This Court has before it two objections to the Magistrate's denial of Plaintiffs' Motion to Compel (Dkt. # 96 and #100), which deal with this requested discovery.

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 34

37. **Defendant's Statement of Fact:** Prentice asserts that the fact he was not selected for the new Store Operations Supervisor position *following* the reorganization was discriminatory.

   **Response**:  Disputed that this is the only action for which Mr. Prentice claims discrimination.  As discussed more fully in SOF ¶ 31, the failure of OfficeMax to select Mr. Prentice for the new Store Operations Supervisor position – despite its admission that he was qualified – is not Mr. Prentice's only charge of discrimination.

38. **Defendant's Statement of Fact:** Prentice did not know who was selected to fill the new Store Operations Supervisor role, nor did he know that person's pay.

   **Response**:  Disputed.  This "statement of fact" implies that Mr. Prentice has no evidence that who OfficeMax hired in various post-reorganization positions for the St. Croix store.  In fact, Plaintiffs have – but are not limited to – the following evidence that the post-reorganization employees made more money than they did:

   - After the close of discovery, OfficeMax produced the pay records of certain St. Croix employees.  These pay records reveal that the following employees made held the following positions and made the following salaries:  (1)  Kelly Truelove (white, non-Hispanic), Merchandise Assistant Manager, $19.23 per hour; (2) Seth Wilcoxon (white, non-Hispanic), Merchandise Assistant Manager, $18.27 per hour; (3) Miguel Antonio (white, Hispanic), Furniture Specialist, $9.50 per hour; (4) Michele Olson (white, non-Hispanic), Store Operations Supervisor, $13.00 per hour; (5) Alicia Gilbert (white, non-Hispanic), non-supervisory Store Associate, $7.90 per hour.  *See*

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND
COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 35

> **Exhibit 18**, Employee Records of Post-Reorganization Employees at pp. OMX 001868-1891.

- Additionally, it is disingenuous for OfficeMax to raise Plaintiffs' alleged lack of knowledge regarding its post-reorganization employees' positions.  As discussed in Plaintiffs' Rule 56(d) Motion that it filed with its response to OfficeMax's Motion for Summary Judgment, Plaintiffs have repeatedly sought the information regarding the identity of other employees and the positions that they held; and information about the race, ethnicity, and pay of those employees.  To date, OfficeMax has failed to fully comply with those requests.  This Court has before it two objections to the Magistrate's denial of Plaintiffs' Motion to Compel (Dkt. # 96 and #100), which deal with this requested discovery.

39. **Defendant's Statement of Fact:** Prentice viewed his move from Operations Supervisor to Sales Supervisor in December 2007 or January 2008 as discriminatory because Prentice thought the move was confusing and was not explained satisfactorily.

**Response**:   Disputed that Mr. Prentice's claim of discrimination related to his move from Operations Supervisor to Sales Supervisor is limited to the move's being "confusing" and not being "explained satisfactorily."   In addition, the reason OfficeMax claims it gave him his demotion was that he had not completed his OfficeMax University.  However, his fellow Operations Supervisor, Darrette Serrano (Hispanic), was allowed to perform her duties, even though she had also not completed her

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND**
**COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO**
**MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 36

OfficeMax University work.  *See* **Exhibit 4**, Prentice Depo. at pp. 74-83.  On August 10,

2007, he was moved back to Operations Supervisor.  *See* **Exhibit 4**, Prentice Depo. at

pp. 74-83.  On December 27, 2007, Mr. Prentice was once again demoted to Sales

Supervisor which was the result of an audit completed by a Caucasian male from the

States.  *See* **Exhibit 3**, Bynum Depo. at pp. 42-47    He was replaced by Dorcus

Barbeneaux, a light-skinned woman from Puerto Rico.  *See* **Exhibit 3**, Bynum Depo. at

pp.71-72.

40. **Defendant's Statement of Fact:** OfficeMax associates from other stores (including
    Puerto Rico and Florida stores) have been loaned to Store 1368 for various purposes
    both before and after the reorganization, and while on loan, those associates' travel
    expenses are reimbursed by the company.

    **Response**:  Undisputed.

41. **Defendant's Statement of Fact:** Francis alleged that because there were new faces in
    the store following the restructure, and these new individuals were performing work that
    former associates could have performed, OfficeMax's representations about the
    restructure were fraudulent or deceitful.

    **Response**:  Disputed.  OfficeMax told Plaintiffs that the reason for the change was

    for cost-savings.  Yet, the St. Croix store was one of its top-performing stores and did

    not save money in the reorganization.   First, OfficeMax staffed the St. Croix with off-

    island white and Hispanic employees at great expense to OfficeMax.  *See* **Exhibit 5**,

    Flores Depo. at p. 77.  Second, OfficeMax acknowledged in their employee tracking

    system, that Plaintiffs were qualified for the post-reorganization positions for which they

    applied. *See* **Exhibit 16** and **Exhibit 17**, Screen Shots for Francis and Prentice,

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND
COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 37

respectively, showing both as qualified for the post-reorganization jobs.  Third, the

employees that OfficeMax hired to replace Plaintiffs were paid a much higher wage than

Plaintiffs.  *See* CSOF ¶¶ 29-30.

42. **Defendant's Statement of Fact:**  Prentice alleged that Store Manager Bynum's
expression to Prentice that serving in the role of Sales Supervisor was a growth
opportunity, and her indication that Prentice may be promoted, were fraudulent or
deceitful statements because two or three weeks later, the nationwide restructure was
announced.

**Response**:  Undisputed.  In addition, the move to Sales Supervisor was not a

"growth opportunity" because Mr. Prentice was fired, and OfficeMax failed to rehire

Mr. Prentice.  In OfficeMax's Motion for Summary Judgment, it claims that Mr. Prentice

was not rehired because he had received a final, written warning.  But, there is no

evidence of this final, written warning.  *See* CSOF ¶ 18.  Further, Defendant then

changed its story and claimed that the real reason Prentice was not rehired is that he

wanted too high a salary, but Prentice had never discussed what salary he wanted.

*See* **Exhibit 6**, Bryan Depo. at p. 72 ("Q:  who told you that Mr. Prentice was seeking a

higher salary for the position of operations supervisor than the company was prepared

to offer?  A:  As stated earlier, Nannette Ramierz told me.").  Under oath, Ms. Ramirez

denied having any knowledge as to why Mr. Prentice was not selected for any post-

reorganization position. *See* **Exhibit 10**, Ramirez Depo at p. 61.  Further, OfficeMax

never discussed any salary request with Mr. Prentice in his interview. *See, generally,*

**Exhibit 4**, Prentice Depo.

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND
COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 38

43. **Defendant's Statement of Fact:** When Bynum discussed the move from Operations Supervisor to Sales Supervisor with Prentice, she truly believed he would perform better in the sales position, that it was a better opportunity for him to grow with the company, and she tried to place him to his strength.

   **Response**:   Plaintiffs do not dispute that Ms. Bynum testified that she stated that

the move from Operations Supervisor to Sales Supervisor was a positive; however,

other actions indicate that the reasons for the move were furthered by OfficeMax's

discriminatory intent.

   On May 15, 2007, OfficeMax reassigned Mr. Prentice from Operations Supervisor to

Sales Supervisor.  *See* **Exhibit 4**, Prentice Depo. at p. 49.  The reason he was given for

the move was that he had not completed his OfficeMax University.  *See* **Exhibit 8**,

Prentice Personnel File at OMX 00028. However, his fellow Operations Supervisor,

Darrette Serrano (Hispanic), remained as Operations Supervisor, and was not demoted,

even though she had also not completed her OfficeMax University work.  *See* **Exhibit 4**,

Prentice Depo. at pp. 74-83.  Mr. Prentice completed his OfficeMax University training

100%.  *See* **Exhibit 8**, Prentice Personnel File at p. OMX 00027; **Exhibit 3**, Bynum

Depo. at p. 52.  Then, on August 10, 2007, after he complained about his demotion in

writing, he was moved back to Operations Supervisor.  *See* **Exhibit 4**, Prentice Depo.

at pp. 74-83; *see also*, **Exhibit 8**, Prentice Personnel File at p. OMX00027 (written

complaint about demotion). On December 27, 2007, Mr. Prentice was once again

moved from Operations Supervisor to Sales Supervisor.  *See* **Exhibit 4**, Prentice Depo.

at pp. 74-83.  This move was the result of an audit completed by a Caucasian male

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND
COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 39

from the States who complained that Mr. Prentice was too slow in counting his cash

drawer, even though his counts were accurate. *See* **Exhibit 3**, Bynum Depo. at pp. 42-

47. He was replaced by Dorcus Barbeneaux, a Hispanic woman. *See* **Exhibit 3**,

Bynum Depo. at p.64.

44. **Defendant's Statement of Fact:** The compensation associated with both the Sales
Supervisor position and the Operations Supervisor position was the same, and there
was no difference in benefits.

    **Response**: Undisputed. However, Plaintiffs' dispute that the jobs were the same

in all respects. The Operations Supervisor position, although it paid the same, had

additional prestigious responsibilities, including cash office responsibilities. Mr.

Prentice therefore viewed the move as a demotion, a view that he shared with

OfficeMax. *See* **Exhibit 4**, Prentice Depo. at pp. 159-160.

45. **Defendant's Statement of Fact:** During his tenure with OfficeMax, Prentice served as
both an Operations Supervisor and a Sales Supervisor.

    **Response**: Undisputed.

46. **Defendant's Statement of Fact:** As an Operations Supervisor and Sales Supervisor,
Prentice acknowledged he was responsible for directing or assigning tasks to particular
employees, including cashiers and sales associates, and that these associates were
accountable to Prentice for performing the tasks he assigned.

    **Response**: Disputed. OfficeMax overstates Mr. Prentice's ability to "supervise"

employees. As Operations Supervisor, Mr. Prentice would watch over the sales floor

and ask associates to move to a cash register, if that were required. *See* **Exhibit 4**,

Prentice Depo. at p.44. But, this was rare because there was a schedule that told the

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND
COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 40

employees what to do, and he had no control over the schedule.  *See* **Exhibit 4**,
Prentice Depo. at pp. 44-46; **Exhibit 3**, Bynum Depo. at pp. 47-48.  He could not
hire or fire employees.  *See* **Exhibit 4**, Prentice Depo. at pp.44-46; **Exhibit 3**, Bynum
Depo. at pp. 47-48.  He did not have the power to discipline employees without
management's approval.  *See* **Exhibit 4**, Prentice Depo. at pp. 44-48; **Exhibit 3**, Bynum
Depo. at pp. 47-48.

47. **Defendant's Statement of Fact:** Prentice also testified regarding his responsibility for
coaching those associates he directed, and for reporting to management the disciplinary
concerns which arose regarding those associates.

   **Response**:  Disputed.  Mr. Prentice's testimony regarding his responsibility to
coach associates was that although he could raise the issues about associates'
performance with management, he had no ability to discipline them.  *See* **Exhibit 4**,
Prentice Depo. at pp. 45-49.  There were times when he recommended discipline, but
the Store Manager did not agree, and the employee was not disciplined. *See*
**Exhibit 3**, Bynum Depo. at p. 31.

48. **Defendant's Statement of Fact:** Prentice indicated that he supervised between two
and five associates on a daily basis.

   **Response**:  Disputed.  Plaintiffs dispute the term "supervised" meets the legal
definition under the Virgin Islands Wrongful Discharge Act.  Instead, Mr. Prentice
would watch over the sales floor and ask associates to move to a cash register, if that
were required.  *See* **Exhibit 4**, Prentice Depo. at p.44.  But, this was rare because there
was a schedule that told the employees what to do, and he had no control over the

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND
COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 41

schedule.  *See* **Exhibit 4**, Prentice Depo. at pp.44-46; **Exhibit 3**, Bynum Depo. at

pp. 47-48.  He could not hire or fire employees.  *See* **Exhibit 4**, Prentice Depo. at

pp.44-46.  He did not have the power to discipline employees without management's

approval.  *See* **Exhibit 4**, Prentice Depo. at pp. 44-48.

49. **Defendant's Statement of Fact:** Prentice acknowledged the job descriptions for his
positions of Operations Supervisor and Sales Supervisor, and discussed the
responsibilities set forth on those job descriptions which he fulfilled.

   **Response**:  Undisputed.

50. **Defendant's Statement of Fact:** During her tenure with OfficeMax, Francis served as a
Logistics Supervisor, and she was responsible for assigning tasks to store associates.

   **Response**:  Disputed.  As the Logistics Supervisor, she was in charge of inventory.

*See* **Exhibit 3**, Bynum Depo. at pp. 107-108.  No other employee reported to her, and

she was not responsible for supervising employees.  *See* **Exhibit 1**, Francis Depo. at

p. 53:11 - 53:16.  Ms. Francis could not hire, discipline, or fire employees.  *See*

**Exhibit 1**, Francis Depo. at p. 58:7 - 58:14.  The only involvement she had with other

employees was to show them how and where to stock items when the location of the

inventory changed.   *See* **Exhibit 1**, Francis Depo. at pp. 53:17 - 58:6.

51. **Defendant's Statement of Fact:** Francis acknowledged the job description for the
Logistics Supervisor position, and the responsibilities she fulfilled.

   **Response**:  Disputed.   Ms. Francis testified that the job descriptions were not

accurate. *See* **Exhibit 1**, Francis Depo. at pp. 65-66.  Ms. Francis was responsible for

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND
COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 42

praising her associates, and communicating with the store by using the store's

communication system (the Boundless Device).

52. **Defendant's Statement of Fact:** In connection with recommendations made by a third-party consultant, one basis for OfficeMax's decision to restructure its retail stores was to lower the company's cost of sales.

    **Response**:   Undisputed that one stated reason for the reorganization was to lower

costs of sales.  The third-party who was hired by OfficeMax, LSI, evaluated a sample of

stores to reach its conclusions, but failed to evaluate the St. Croix (or St. Thomas or

Puerto Rico) stores.  *See* **Exhibit 2**, Richardson Depo. at pp. 43-49.  Instead, LSI

sampled only the stores that were close to LSI's operations, and no consideration was

given to St. Croix's unique geographical location.  *See* **Exhibit 2**, Richardson Depo. at

pp. 43-49.  The St. Croix store, at the time of reorganization, had a $7 million sales

volume, which placed the store in the top 10% for the entire company.  *See* **Exhibit 2**,

Richardson Depo. at pp. 55-57.  Because of its sales volume, the St. Croix store

required, even after reorganization, the highest level of staffing among the OfficeMax

stores. *See* **Exhibit 2**, Richardson Depo. at pp. 56-61.  The third-party, LSI, did not

specifically recommend that OfficeMax reduce its workforce.   *See* **Exhibit 2**,

Richardson Depo. at pp. 65-66.

53. **Defendant's Statement of Fact:** OfficeMax communicated in its reorganization materials that the retail store restructure was essential for the future and survival of OfficeMax.

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND
COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 43

**Response**:  Disputed.  In support of this "undisputed statement of fact," OfficeMax

refers to the deposition of Mr. Flores who testified that when he attended a meeting

about the reorganization, he was told that the purpose of the reorganization was to

"improve our customer service."  *See* **Exhibit 5**, Flores Depo. at pp. 20-21.  Only in

improving customer service could the company survive.  *See* **Exhibit 5**, Flores Depo.

at pp. 20-21. There is no evidence this information was communicated to all employees.

54. **Defendant's Statement of Fact:** OfficeMax reported in its 2008 annual report that in a
rapidly deteriorating economic environment, OfficeMax created cost efficiencies across
the business, including reorganizing its retail store management.

   **Response**:  Disputed.  This statement of fact is entirely misleading and is taken

out of context.  The Annual Report (which is hearsay and not properly before this

Court), speaks for itself.  It states that "The past year was an historic year – one that

was characterized by a rapidly deteriorating economic environment and unprecedented

volatility in the global financial markets.  For OfficeMax, 2008 was a time to learn,

adjust, and most importantly persevere as we focused on pursuing a strategy to

address near-term challenges while also positioning the Company for long-term

success."

55. **Defendant's Statement of Fact:** Francis testified that <u>two</u> OfficeMax actions
constituted extreme and outrageous conduct: (1) placing her on a final written warning,
and (2) not hiring her for three positions for which she applied.

   **Response**:  Disputed that Ms. Francis is limited to these two actions for her claims

of discrimination.  In addition, OfficeMax's continued, cumulative discriminatory actions

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND**
**COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO**
**MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 44

constituted extreme and outrageous conduct.  Those actions include, but are not limited

to:

- Not considering "local" applicants, even though many of them had college

  degrees.  *See* CSOF ¶ 5.

- Not sharing corporate information, including announcement of the

  reorganization, with the St. Croix store by disseminating important

  information only in Spanish, despite management's understanding that the

  St. Croix personnel could not understand Spanish.  *See* CSOF ¶¶ 4, 20.

- Underpaying Plaintiffs and failing to rectify the recognized pay disparity.  *See*

  CSOF ¶¶ 8-9.  Then, paying post-reorganization employees (none of whom

  were black or West Indian) significantly higher salaries despite the stated

  intention to save money during the reorganization.  *See* CSOF ¶¶ 28-29.

- Reporting that Mr. Prentice was on a final, written warning with no evidence

  (or research into facts) of a final, written warning.  *See* CSOF ¶ 18.

- Allowing a white Assistant Manager to go over her Store Manager's head

  to violate OfficeMax's policy of progressive discipline by placing a final,

  written warning in Ms. Francis's file for an alleged violation of the absentee

  policy.  *See* CSOF ¶ 12.  This is especially outrageous because Ms. Francis

  cleared her absence with her Store Manager, and obtained a medical

  release.  *See* CSOF ¶ 12.  The Store Manager did not know about the final,

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND**
**COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO**
**MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 45

written warning and did not agree that even a verbal warning was warranted.
*See* CSOF ¶ 12.

- Failing to follow its own policy of properly evaluating employees and sharing those evaluations with employees. *See* CSOF ¶¶ 11, 17, 18. Using a computer system with known problems for employee reviews and failing to correct erroneous reviews when the issue was raised to those who had the ability to fix the errors. *See* CSOF ¶ 11.

- Claiming that employees would be provided a 2008 performance evaluation, but then failing to do so even though it violated the company's own stated directives and it resulted in the termination of qualified employees. *See* CSOF ¶ 19.

- Evaluating and disciplining predominantly black West Indian hourly employees for results that are outside their control. *See* CSOF ¶ 7.

- Requiring black and non-Hispanic employees to repeat requests for help and then assisting Hispanic employees upon the first request. *See* CSOF ¶ 6.

- Falsely promising raises and promotions despite plans to reorganize and fire employees. *See* CSOF ¶ 9.

- Eliminating all black employees in a supervisory role under the stated purpose of eliminating all supervisory positions, but then, behind closed

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND
COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 46

    doors, begging the only white supervisory employee to come back to work.

    *See* CSOF ¶¶ 21-27.

56. **Defendant's Statement of Fact:** Prentice described <u>six</u> OfficeMax actions as extreme and outrageous: (1) marking Prentice down in his 2007 performance appraisal, (2) moving him from Operations Supervisor to Sales Supervisor, (3) assigning him duties in the warehouse, (4) providing no assistance to Prentice in disciplining other associates, (5) having his Store Manager approach him about another possible position which never materialized because shortly thereafter, the store reorganization was announced, and (6) the manner in which OfficeMax conducted the store reorganization.

    **Response**:   Disputed that Mr. Prentice is limited to the six listed extreme and outrageous actions.   In addition, OfficeMax's continued, cumulative discriminatory actions constituted extreme and outrageous conduct.   Those actions include, but are not limited to:

- Not considering "local" applicants, even though many of them had college degrees.  *See* CSOF ¶ 5.

- Not sharing corporate information, including announcement of the reorganization, with the St. Croix store by disseminating important information only in Spanish, despite management's understanding that the St. Croix personnel could not understand Spanish.  *See* CSOF ¶¶ 4, 20.

- Underpaying Plaintiffs and failing to rectify the recognized pay disparity.  *See* CSOF ¶¶ 8-9.  Then, paying post-reorganization employees (none of whom were black or West Indian) significantly higher salaries despite the stated intention to save money during the reorganization.  *See* CSOF ¶¶ 28-29.

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND
COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 47

- Reporting that Mr. Prentice was on a final, written warning with no evidence (or research into facts) of a final, written warning.  *See* CSOF ¶ 18.

- Allowing an Assistant Manager to go over her Store Manager's head to violate OfficeMax's policy of progressive discipline by placing a final, written warning in Ms. Francis's file for an alleged violation of the absentee policy.  *See* CSOF ¶ 12.  This is especially outrageous because Ms. Francis cleared her absence with her Store Manager, and obtained a medical release.  *See* CSOF ¶ 12.  The Store Manager did not know about the final, written warning and did not agree that even a verbal warning was warranted.  *See* CSOF ¶ 12.

- Failing to follow its own policy of properly evaluating employees and sharing those evaluations with employees.  *See* CSOF ¶¶ 11, 17, 18.  Using a computer system with known problems for employee reviews and failing to correct erroneous reviews when the issue was raised to those who had the ability to fix the errors.  *See* CSOF ¶ 11.

- Claiming that employees would be provided a 2008 performance evaluation, but then failing to do so even though it violated the company's own stated directives and it resulted in the termination of qualified employees.  *See* CSOF ¶ 19.

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND**
**COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO**
**MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 48

- Evaluating and disciplining hourly employees for results that are outside their control.  *See* CSOF ¶ 7.

- Requiring black and non-Hispanic employees to repeat requests for help and then assisting Hispanic employees upon the first request.  *See* CSOF ¶ 6.

- Falsely promising raises and promotions despite plans to reorganize and fire employees.  *See* CSOF ¶ 9.

- Eliminating all black employees in a supervisory role under the stated purpose of eliminating all supervisory positions, but then, behind closed doors, begging the only white supervisory employee to come back to work.  *See* CSOF ¶¶ 21-27.

57. **Defendant's Statement of Fact:** Francis' emotional distress consisted of weight gain, headaches, sleeplessness, higher blood pressure, anger, and a change in her demeanor.

     **Response**:  Disputed.  After losing her position at OfficeMax, Sophia Francis suffered from severe emotional distress.  This emotional distress was evidenced by Francis' weight gain, headaches, sleeplessness, higher blood pressure, anger, and a change in her demeanor.  *See* **Exhibit 1**, Francis Depo. at pp. 115:10 - 118:24.  To combat her increased blood pressure, Francis' physician increased Francis' medication dosage.  *Id.* at pp. 116:8 - 118:21.  Francis' headaches grew so severe that she was forced to take prescription medication.  *Id.* at p. 118:18 - 118:24.

58. **Defendant's Statement of Fact:** Francis claimed that her healthcare provider prescribed medication for her increased blood pressure and sleeplessness.

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 49

**Response**:   Undisputed.  In addition, Ms. Francis takes Procardia for her increased blood pressure and severe headaches.  *See* **Exhibit 1**, Francis Depo. at pp. 9-10.  She must also take Propanolol and Cozaar for increased blood pressure.  *See* **Exhibit 1**, Francis Depo. at pp. 9-10.   Ms. Francis's regular, clinic physician increased the dosage for her hypertension medication immediately after OfficeMax fired her.  *See* **Exhibit 1**, Francis Depo. at p. 116.  In approximately August 2008, the doctor noted that the hypertension was getting higher, and suggested that Ms. Francis be hospitalized for her hypertension.  *See* **Exhibit 1**, Francis Depo. at pp. 116-117.  He then prescribed her additional high blood pressure medication.  *See* **Exhibit 1**, Francis Depo. at pp. 116- 117.  Her physician prescribed her Restoril for her sleeplessness that was caused by her termination.  *See* **Exhibit 1**, Francis Depo. at pp. 116-117.  He also prescribed her Fioricet for her debilitating headaches.  *See* **Exhibit 1**, Francis Depo. at p. 117.

59. **Defendant's Statement of Fact:** In response to OfficeMax's Demand for Production of Documents requesting, among other things, all medical records, Francis produced no records which supported her claim that she was seen by a medical provider or prescribed medication for conditions caused in any way by OfficeMax.

    **Response**:   Plaintiffs agree that Francis did not provide medical records in response to a production request, but she provided a medical authorization and the name of her healthcare provider, the Charles Harwood Clinic.  *See* **Exhibit 1**, Francis Depo. at p. 13.  Francis is without knowledge regarding whether OfficeMax obtained her medical records from the Charles Harwood Clinic, which it was free to do.

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND
COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 50

60. **Defendant's Statement of Fact:** Francis claimed she was depressed, but she was never diagnosed as such, and she never sought medical attention from a psychologist or psychiatrist for her alleged depression.

   **Response**:   Disputed.  Ms. Francis sought the assistance of her regular physician for her depression, which manifested itself in sleeplessness.  *See* **Exhibit 1**, Francis Depo. at p. 13.  For this symptom, Dr. Connell at the Charles Harwood Clinic prescribed Restoril.  *See* **Exhibit 1**, Francis Depo. at pp. 13-14.  In addition, Ms. Francis's family complained that she was depressed, grouchy, and sour.  *See* **Exhibit 1**, Francis Depo. at p. 14.  Ms. Francis's friends, including Awilda Ramirez, also noted the change in her, and asked why Ms. Francis was not calling them anymore.  *See* **Exhibit 1**, Francis Depo. at p. 14.

61. **Defendant's Statement of Fact:** Prentice testified that his distress consisted of headaches, anxiety, depression, sleeplessness, hurt feelings, confusion, and general unhappiness.

   **Response**:   Disputed.  Because of his treatment by OfficeMax, Benjamin Prentice also suffered from severe emotional distress.   Prentice's emotional distress was evidenced by headaches, anxiety, depression, mood changes and sleeplessness.  *See* **Exhibit 4**, Prentice Depo. at pp. 149:5 - 150:14.  Prentice took Fioricet, a prescription medication, for his headaches.  *See* **Exhibit 4**, Prentice Depo. at pp. 152:6 - 152:24.

62. **Defendant's Statement of Fact:** The only medical practitioner Prentice claims to have seen in connection with issues arising from his employment with OfficeMax is a Dr. Wilbert Williams.

   **Response**:   Undisputed.

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND
COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 51

63. **Defendant's Statement of Fact:** Prentice could not recall seeing Dr. Williams after his termination from OfficeMax.

   **Response**:   Undisputed.

64. **Defendant's Statement of Fact:** [blank]

   **Response**:   Not applicable.

65. **Defendant's Statement of Fact:** Prentice never sought medical attention from a psychologist or psychiatrist with regard to his employment with OfficeMax or termination therefrom.

   **Response**:   Undisputed.  However, Mr. Prentice sought the care of Dr. Williams for

   his headaches and symptoms of anxiety and depression.  *See* **Exhibit 4**, Prentice

   Depo. at pp. 151-152.  Dr. Williams prescribed Fioricet and Xanax.  *See* **Exhibit 4**,

   Prentice Depo. at pp. 151-152.

66. **Defendant's Statement of Fact:** In response to OfficeMax's Demand for Production of Documents requesting, among other things, all medical records, Prentice produced no records.

   **Response**:   On April 7, 2009, Mr. Prentice provided a medical authorization to

   OfficeMax that allowed it to obtain any medical records from any of Mr. Prentice's

   treating physicians.  Mr. Prentice did not have possession of any of his medical records

   as it relates to this case, but he identified Dr. Wilbert Williams as the doctor that treated

   him in 2008.  *See* **Exhibit 4**, Prentice Depo. at pp. 155-156.  Dr. Williams has since left

   the island.

67. **Defendant's Statement of Fact:** Francis' only alleged manifestation of severe physical injury was a recurrence of headaches she had experienced sometime before her termination.

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 52

**Response**: Disputed.   Ms. Francis suffered weight gain, headaches, sleeplessness, higher blood pressure, anger, and a change in her demeanor. *See* **Exhibit 1**, Francis Depo. at pp. 115:10 - 118:24. To combat her increased blood pressure, Francis' physician increased Francis' medication dosage. *Id.* at pp. 116:8 - 118:21.  Francis' headaches grew so severe that she was forced to take prescription medication. *Id.* at p. 118:18 - 118:24.

68. **Defendant's Statement of Fact:** Prentice's alleged severe physical injury consisted of headaches, anxiety, depression, and embarrassment.

    **Response**:   Undisputed.  Mr. Prentice's doctor, Dr. Wilbert Williams prescribed him Fioricet and Xanax for his symptoms.  *See* **Exhibit 4**, Prentice Depo. at pp. 151-152.

69. **Defendant's Statement of Fact:** OfficeMax's nationwide store reorganization eliminated nearly 4,400 positions and over 1,300 associates across the nation.

    **Response**:   Undisputed.  However, Plaintiffs dispute that OfficeMax has adduced any evidence that it reduced its workforce in St. Croix.

## PLAINTIFFS' COUNTER-STATEMENT OF MATERIAL FACTS

In addition to the foregoing, there are the following additional undisputed material facts:

1.     OfficeMax, headquartered in Naperville, Illinois, opened a retail store in St. Croix at the end of 2006.  *See* **Exhibit 2**, Richardson Depo. at pp. 8, 16:2 - 16:3.

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND
COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 53

2.      The St. Croix store reports to a District Manager, who is headquartered in Puerto Rico.  *See* **Exhibit 2**, Richardson Depo. at pp. 17:20 - 18:24.  When the St. Croix store opened, the District Manager was Jose Torres.  *See* **Exhibit 2**, Richardson Depo. at pp. 17:20 - 18:24.  In March 2008, Rafael Flores took over the position of District Manager over the St. Croix store.  *See* **Exhibit 2**, Richardson Depo. at pp. 17:20 - 18:24.

3.      The St. Croix store has always been a high-performing store.  *See* **Exhibit 2**, Richardson Depo. at pp. 27:6 - 28:18.  It is one of the highest volume stores within the OfficeMax organization; it is in the top 5% for volume.  *See* **Exhibit 2**, Richardson Depo. at pp. 30:24 - 31:15.  Its profitability is better than average.  *See* **Exhibit 2**, Richardson Depo. at p. 31:16 - 31:20.  At the time of reorganization, it merited additional staffing because of its volume.  *See* **Exhibit 2**, Richardson Depo. at pp. 58-61.

4.      Any information coming from Naperville, Illinois to St. Croix would go through the Puerto Rican management structure by way of weekly conference calls. *See* **Exhibit 3**, Bynum Depo. at pp. 130:23 - 132:5.  These calls were held 90% in Spanish.  *Id.* Ms. Bynum, an African-American Store Manager for the St. Croix store explained to management that she was not fluent enough in Spanish to understand the important information in the conference calls.  *See* **Exhibit 3**, Bynum Depo. at pp. 128:17 - 128:19, 130:23 - 132:5.  Although management provided her separate calls in English for two to three weeks following her complaint, they then stopped.  *See* **Exhibit 3**, Bynum Depo. at pp. 130:23 - 132:5.

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND
COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 54

5.      OfficeMax, from the beginning had a pattern of not hiring many "local"
people (a phrase used in the Virgin Islands to refer to black, West-Indian persons).  *See*
**Exhibit 1**, Francis Depo. at pp. 107-112.  Near the beginning of its operations, OfficeMax
held a job fair where local, college-educated candidates applied for jobs.  *See* **Exhibit 1**,
Francis Depo. at pp. 107-112.  After interviewing them, they were told that they were
"overqualified," and did not hire the local applicants.  *See* **Exhibit 1**, Francis Depo. at
pp. 107-112.

6.      Also from the beginning, the St. Croix store suffered a persistent problem with
overstocking, which made it impossible for the employees, including Ms. Francis, to
perform their inventory control duties.  *See* **Exhibit 3**, Bynum Depo. at pp. 107-108 (But,
yet, it evaluated her on a job that she couldn't possibly do.).  Despite the problem being
outside of Ms. Francis's control, OfficeMax issued Ms. Francis a verbal warning in her
personnel file.   *See* **Exhibit 7**, Excerpts from Sophia Francis's personnel file at
p. OMX 00172.  This warning was not the fault of Ms. Francis, an hourly employee.  *See*
**Exhibit 3**, Bynum Depo. at pp. 107-108.   The Puerto Rican management ignored
Ms. Bynum's pleas for help, even when she complained often and sent photographs
that illustrated the overstocking problem.  *See* **Exhibit 3**, Bynum Depo. at pp. 107-108,
130-132.  Yet, when a Puerto Rican employee would visit the St. Croix store and call back
to complain, the situation was immediately addressed.  *See* **Exhibit 3**, Bynum Depo. at
pp. 130-132.

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND
COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 55

7.      As part of OfficeMax's policy, the St. Croix store was periodically reviewed by Loss Prevention Auditors who come from Puerto Rico or the United States.  *See* **Exhibit 3**, Bynum Depo. at p. 72:5 - 72:10.

8.      Ms. Francis was one of the first employees of the St. Croix store, and she began work before the store opened to the public.  *See* **Exhibit 1**, Francis Depo. at p. 42:1 - 42:8.  Ms. Francis worked as the Logistics Supervisor the entire time she worked for OfficeMax.  *See* **Exhibit 1**, Francis Depo. at pp. 7:7 - 7:12, 29:10 - 29:22.  For her work at OfficeMax, she earned $7.50 per hour the entire time of her employment.  *See* **Exhibit 1**, Francis Depo. at pp. 36:21 - 37:8.

9.      During her time at OfficeMax, Ms. Francis noted that she was being paid less than her peers.  *See* **Exhibit 1**, Francis Depo. at pp. 105-106.  On pay days, she would see a log of every person's pay.  *See id.*  She could compare her color to the color of the employee with higher pay and see that she was being paid less.  *See id.*  Further, OfficeMax was aware of the pay inequity for Ms. Francis.  At a minimum, Ms. Francis was paid $1 less per hour than Plaintiff Benjamin Prentice, who made $8.50 per hour.  *See* **Exhibit 4**, Prentice Depo. at p. 180.  And, because Prentice and Francis should have been paid the same thing, Ms. Francis was being underpaid.  *See* **Exhibit 6**, Bryan Depo. at p. 153 (testifying that that Operations Supervisors and Logistics Supervisors should be paid the "same thing, same positions.").  Ms. Bynum attempted to rectify the pay disparity and get Ms. Francis a raise to the pay she should have been receiving.  *See* **Exhibit 1**, Francis

Depo. at pp. 69-70.  However, despite being told about the pay disparity, Mr. Torres denied Ms. Francis a raise.  *See* **Exhibit 7**, Excerpts from Sophia Francis's personnel file at p. OMX 00177.  Even through the time of her discharge, Ms. Francis's supervisor continued to promise her a "big raise."  *See* **Exhibit 1**, Francis Depo. at pp. 69-72.

10.     As the Logistics Supervisor, Ms. Francis was in charge of inventory.  *See* **Exhibit 3**, Bynum Depo. at pp. 107-108.  No other employee reported to her, and she was not responsible for supervising employees.  *See* **Exhibit 1**, Francis Depo. at p. 53:11 - 53:16.  Ms. Francis could not hire, discipline, or fire employees.  *See* **Exhibit 1**, Francis Depo. at p. 58:7 - 58:14; **Exhibit 3**, Bynum Depo. at pp. 28-31.  The only involvement Francis had with other employees was to show them how and where to stock items when the location of the inventory changed.  *See* **Exhibit 1**, Francis Depo. at pp.53:17 - 58:6.

11.     Although OfficeMax had an annual review process for all employees, OfficeMax did not ever share any of her employee reviews with Ms. Francis.  *See* **Exhibit 6**, Bryan Depo. at p. 111 ("we have an annual appraisal process, and it's systemic"); **Exhibit 1**, Francis Depo. at p. 69:4 - 69:18.  It was OfficeMax's expectation that annual reviews would be done and that a store manager would have a meeting with each supervisor to review the evaluation with that employee.  *See* **Exhibit 2**, Richardson Depo. at p. 91.  Mr. Flores, the Direct Manager of Retail Operations, reported that he never saw a performance appraisal for Ms. Francis, and that the review that he

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND
COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 57

was shown from her file contained information regarding store performance that was

auto-populated, that it is company practice that appraisals be signed, and that "there should

be comments" on the appraisal.  *See* Deposition of Rafael Flores ("Flores Depo."), **Exhibit**

**5** at pp. 56-62.  No annual review appears in Ms. Francis's personnel file.  *See generally,*

**Exhibit 7**, Francis Personnel File; *but see* **Exhibit 8**, Prentice Personnel File at pp. OMX

00351-00353 (including a 2007 appraisal that is unsigned by the Store Manager).

However, the 2007 Performance Appraisal that was produced in this litigation shows an

unsigned document with no comments. *See* **Exhibit 19**, Francis 2007 Performance

Appraisal at pp. OMX 000758-0761.  Further, the scoring on the appraisal is auto-populated

with numbers that indicate how the entire store is doing, without reference to

the individual's performance.  *See* **Exhibit 5**, Flores Depo. at pp. 56-62.  Further,

Ms. Bynum recalled an issue with Ms. Francis's 2007 Performance Appraisal.  *See*

**Exhibit 3**, Bynum Depo. at pp. 105-106.  Specifically, Ms. Bynum testified that "The

performance appraisals were done through a computer system and it was very confusing.

We put something in, and then we got something back.  What I got back was wrong . . .

Several were wrong, and I had to go back in and correct them . . . When I went back in for

Ms. Francis, and it has something to do with the reason there are no comments here, but I

don't remember quite what, but I remember hers being totally wrong.  And when I went

back to correct it, I was unable to do so in the computer system . . . What I put in was

correct, but what I got back was not.  And when I tried to correct it, the computer wouldn't

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND
COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 58

let me, so I called the regional office in Puerto Rico and attempted to get them to help me

fix it . . . it seems like I spoke to Jose Torres, but I don't know . . . I don't remember why, but

I was not allowed to make any corrections . . . to the best of my knowledge they were not

made."

12.     On March 17, 2008, Ms. Francis's son was ill and had to be hospitalized.  *See*

**Exhibit 1**, Francis Depo. at p. 76.  In conformity with OfficeMax's attendance policy, Ms.

Francis called Ms. Bynum, the Store Manager, to tell her about her situation.  *See* **Exhibit

3,** Bynum Deposition at pp. 93-98; *see also* Section 5 of OfficeMax's Employee Handbook

("Policies"), **Exhibit 14** at p. OMX 00277 ("Associates are required to provide adequate

advanced notice if they will be absent from or arrive late to work.").  Ms. Bynum, the St.

Croix Store Manager, told Ms. Francis to "not to worry, to take care of her son."  *Id*.  When

she returned to work, Ms. Francis supplied a medical release for her absence.  *See* **Exhibit

7**, Francis Personnel File at p. OMX 00174.  Yet, Mary Margaret McMichael, a white

Assistant Store Manager, improperly placed a final, written warning in Ms. Francis's file.  *Id.*

at p. OMX 00171; **Exhibit 3,** Bynum Deposition at p. 26.  Ms. McMichael had a practice of

"going over" the African-American Store Manager's head and talking "directly to either

Puerto Rico or to Chicago corporate."  **Exhibit 3,** Bynum Depo. at pp. 98, 128.  This final

warning was placed in Ms. Francis's file without the St. Croix Store Manager's knowledge

or consent, and it was not signed by the Store Manager. *See* **Exhibit 3,** Bynum Depo. at

pp. 93-98.  The St. Croix Store Manager disagreed with *any* warning – verbal or written –

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND**
**COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO**
**MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 59

for Ms. Francis's absence.  *See* **Exhibit 3,** Bynum Depo. at p. 101.  Importantly, OfficeMax

gave this final warning to Ms. Francis despite its own policy of progressive discipline:  this

circumstance of attending to her son in the hospital was the first (and only) time that she

had ever had a warning for a violation of an attendance policy. *See* **Exhibit 3,** Bynum

Depo. at pp. 100-101.

13.    Benjamin Prentice began working for OfficeMax in March 2007 as an

Operations Supervisor.   *See* **Exhibit 8**, Prentice's Personnel File at p. OMX 00091;

**Exhibit 4**, Prentice Depo. at pp. 29-32.  He made $8.50 per hour for his work at OfficeMax.

*See* **Exhibit 4**, Prentice Depo. at p. 180.  After restructuring, the job description for an

"Operations Supervisor" ranged from $14.25 to $19.00.  *See* **Exhibit 9**, Job Description

at p. OMX 01843.

14.    As Operations Supervisor, Mr. Prentice would watch over the sales floor and

ask associates to move to a cash register, if that were required.  *See* **Exhibit 4**, Prentice

Depo. at p.44.  But, this was rare because there was a schedule that told the employees

what to do, and he had no control over the schedule.  *See* **Exhibit 4**, Prentice Depo. at

pp. 44-46; **Exhibit 3**, Bynum Depo. at pp. 47-48.  He could not hire or fire employees.

*See* **Exhibit 4**, Prentice Depo. at pp. 44-46; **Exhibit 3**, Bynum Depo. at pp. 28-31, 47-48.

He did not have the power to discipline employees without management's approval.

*See* **Exhibit 4**, Prentice Depo. at pp. 44-48.

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND
COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 60

15.     On May 15, 2007, OfficeMax reassigned Mr. Prentice from Operations
Supervisor to Sales Supervisor.  *See* **Exhibit 4**, Prentice Depo. at p. 49.  The reason he
was given for the move was that he had not completed his OfficeMax University.  *See*
**Exhibit 8**, Prentice Personnel File at p. OMX 00028. However, his fellow Operations
Supervisor, Darrette Serrano, remained as Operations Supervisor, and was not demoted,
even though she had also not completed her OfficeMax University work.  *See* **Exhibit 4**,
Prentice Depo. at pp. 74-83.  Mr. Prentice completed his OfficeMax University training
100%.  *See* **Exhibit 8**, Prentice Personnel File at p. OMX 00027; **Exhibit 3**, Bynum
Depo. at p. 52.  Then, on August 10, 2007, after he complained about his demotion in
writing, he was moved back to Operations Supervisor.  *See* **Exhibit 4**, Prentice Depo. at
pp. 74-83; *see also*, **Exhibit 8**, Prentice Personnel File at p. OMX 00027 (written
complaint about demotion). On December 27, 2007, Mr. Prentice was once again moved
from Operations Supervisor to Sales Supervisor.  *See* **Exhibit 4**, Prentice Depo. at pp. 74-
83.  This move was the result of an audit completed by a Caucasian male from the States
who complained that Mr. Prentice was too slow in counting his cash drawer, even though
his counts were accurate.  *See* **Exhibit 3**, Bynum Depo. at pp. 42-47.  He was replaced by
Dorcus Barbeneaux, a Hispanic woman.  *See* **Exhibit 3**, Bynum Depo. at p. 64.

16.     In reviewing the job descriptions for both Operations Supervisor and Sales
Supervisor, Mr. Prentice identified tasks and duties that were not, in fact, assigned to him.
*See* **Exhibit 4**, Prentice Depo. at pp. 53-62 (explaining that he did "recognize top

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND
COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 61

performers while working with store and assistant managers to train, coach, and develop
associates who need to master the critical selling skills," or "validate that associates are
consistently following all policies and procedures; communicate issues and provide
feedback to store management regarding associate performance."  He played no role in
scheduling employees).  Further, he had additional duties that were not listed on the job
descriptions, including moving inventory and generally following the direction of the Store
Manager.  *See* **Exhibit 4**, Prentice Depo. at pp. 49-56.  The Operations Supervisor
position, although it paid the same, had additional prestigious responsibilities, including
cash office responsibilities. *See* **Exhibit 4**, Prentice Depo. at pp. 159-160.

17.    Mr. Prentice received a 2007 performance review that faulted him for a
"failure in leadership."  *See* **Exhibit 4**, Prentice Depo. at pp. 92-94.  When he asked about
this review, he was told that it was because he failed to discipline employees under his
supervision.  *See* **Exhibit 4**, Prentice Depo. at pp. 92-94.  Yet, he did not have the ability to
discipline anyone without management's approval, and this lack of power was something
that he had documented to management.  *See* **Exhibit 4**, Prentice Depo. at pp. 92-94.

18.    In February 2008, OfficeMax placed a "verbal" warning in Mr. Prentice's file
that he never received.  *See* **Exhibit 4**, Prentice Depo. at p. 165.  This warning related to
the store-wide audit over which Mr. Prentice had no control.  *See* **Exhibit 4**, Prentice
Depo. at pp. 165-174.  Although OfficeMax claimed (after this lawsuit was filed) that the
reason Mr. Prentice was ineligible for rehire after reorganization was because he also had a

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND
COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 62

final, written warning for a "policy violation."  *See* **Exhibit 14** at p. OMX 00765.  **No**

**final warning appears in his personnel file**.  *See* **Exhibit 8**, Mr. Prentice's Personnel

file (showing no final, written warning).  OfficeMax, even after searching for this final,

written warning for the purposes of this lawsuit, could never find any evidence of this

warning.  *See* **Exhibit 6**, Bryan Depo. at pp. 57-58.   Ms. Bryan, the witness OfficeMax

designated to testify about topic number 26, "all disciplinary action given to each Plaintiff

during the course of his and her employment with Defendant and the reason thereof,"

admitted that she could not even articulate what "policy" Mr. Prentice violated.  *See*

**Exhibit 6**, Bryan Depo. at pp. 57-58 ("Q:  What was the policy violation?  A:  I do not have

that information."); *see also* Dkt. #50, Notice of 30(b)(6) Deposition of OfficeMax North

America, Inc. at ¶ 26; **Exhibit 6**, Bryan Depo. at pp. 7-8 (designating Bryan on particular

topics, including topic No. 26).  The only person Ms. Bryan talked to about the final policy

violation was Nanette Ramirez, who didn't know anything about the policy violation, but

claimed she relied on Juliette Bynum's reporting that Mr. Prentice was on a final, written

warning.  **Exhibit 6**, Bryan Depo. at pp. 58-59.  Ms. Bynum testified that it was her

recommendation that Mr. Prentice be rehired for a post-reorganized position.  *See*

**Exhibit 3,** Bynum Deposition at pp. 110-111.  Thus acknowledging he was not prohibited

from doing so because of any final warning.

19.   Two to three weeks before the "reorganization" that resulted in termination,

the St. Croix Store Manager told Mr. Prentice that she was working with corporate

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND
COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 63

to promote him to a "Key Carrier Manager" position.  *See* **Exhibit 4**, Prentice Depo. at pp. 69-70.

20. To determine which of the OfficeMax employees would be allowed to apply for rehire, OfficeMax initially stated that anyone who were on final, written warning and/or who received a 2007 performance appraisal of "does not live values" would not be considered.  *See* **Exhibit 2**, Richardson Depo. at pp. 83-85.  However, after disseminating this information, OfficeMax told its Store Managers to provide a 2008 performance evaluation for all OfficeMax associations who had either received a "Does Not Live" on their 2007 performance appraisal, or who had not been evaluated in 2007. This was done so, if these 2008 evaluations were good, these employees could be given rehired positions. *See, e.g.,* **Exhibit 2**, Richardson Depo. at pp. 83-91.  OfficeMax failed to reevaluate Plaintiffs.  *See, e.g.,* **Exhibit 2**, Richardson Depo. at pp. 9, 84-86 (Richardson was designated to testify on the topic of "the criteria under which Plaintiffs were selected for termination and the identities of each person who utilized the criteria to select Plaintiffs for termination"; yet, he admitted that he had never seen a performance appraisal for either Plaintiff for 2008); *see also* **Exhibit 7** and **Exhibit 8**, Personnel files of Ms. Francis and Mr. Prentice (showing no 2008 appraisals for either Plaintiff). OfficeMax prepared a spreadsheet that it produced in this litigation, showing that both Plaintiffs were on final, written warning. *See* **Exhibit 2**, Richardson Depo. at pp. 107-115. Yet, no final, written warning was ever placed in Mr. Prentice's file nor has such a final

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND
COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 64

warning ever been located.  *See, generally,* **Exhibit 8**, Mr. Prentice's personnel file

(showing an absence of a final, written warning).

21.     The St. Croix store was informed about the "reorganization" through a

conference call to the Store's Manager, who was not allowed to participate in the larger call

with management from Puerto Rico because she "wouldn't have understood [Spanish]

anyway."  *See* **Exhibit 10**, Ramirez Depo. at pp. 44-45.  Ms. Ramirez was a Field Human

Resources Manager who provided support to the St. Croix OfficeMax store.   *See*

**Exhibit 10** at pp. 7, 16.  During the conversation between Mr. Flores and Ms. Bynum about

reorganization, Ms Bynum asked "Are you crazy?"  Deposition of Juliette Bynum, ("Bynum

Depo."), **Exhibit 3** at p. 80.  In response, Mr. Flores "encouraged [Ms. Bynum] to go into

the website to get the additional information that she needed to – to convey the information

to her team."   *See* **Exhibit 5,** Flores Depo. at p. 35. Juliette Bynum testified that she

participated in a webinar and received a packet of information regarding how to "go about

enforcing this new restructuring," but she is not sure if the information was in English or

Spanish. *See* **Exhibit 3**, Bynum Depo. at p. 81. Ms. Bynum held a meeting with the

affected employees, including both Plaintiffs.  She told Plaintiffs that they would be laid

off, but that they could reapply for a position, and identified the positions for which

they could reapply. *See* **Exhibit 3**, Bynum Depo. at pp. 84-85.  Ms. Bynum understood

that performance appraisals would be "taken into consideration along with other

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND
COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 65

variables," but did not know that it would preclude rehire.  *See* **Exhibit 3**, Bynum Depo. at

pp. 87-88.

22.     Near the time of OfficeMax's "reorganization," the St. Croix store had six

supervisor-level employees:

> (1) Diane Alexander, the Impress Supervisor (supervisor of
> the copy center), a black, West Indian (*see* **Exhibit 3**,
> Bynum Depo. at pp. 133-134; **Exhibit 1**, Francis Depo. at
> pp. 92- 93);
>
> (2) Sophia Prentice, the Logistics Supervisor, a black, West
> Indian (*see* **Exhibit 1**, Francis Depo. at pp. 92-93);
>
> (3) Benjamin Prentice, the Sales Supervisor, a black, West
> Indian (*see* **Exhibit 1**, Francis Depo. at pp. 92-93);
>
> (4) Camptus, the night Logistics Supervisor, a black, West
> Indian (*see* **Exhibit 1**, Francis Depo. at pp. 55, 92-93);
>
> (5) Sharika Dubose, Assistant Manager of Sales, an African-
> American (*see* **Exhibit 3**, Bynum Depo. at pp. 24, 45;
> **Exhibit 1**, Francis Depo. at pp. 83-84, 92-93); and
>
> (6) Mary Margaret McMichael, the Assistant Manager over
> Logistics, a Caucasian (*see* **Exhibit 3**, Bynum Depo. at
> pp.19, 26, 83-84).

23.     Diane Alexander was fired before the reorganization. *See* **Exhibit 3**, Bynum

Depo. at pp.133-134.

24.     The remaining supervisors were terminated at the time of the

"reorganization."  *See* **Exhibit 1**, Francis Depo. at pp. 92-93.  Even if an employee was not

eligible to interview for a post-reorganization position, OfficeMax did not have a policy (or

practice) that would preclude that employee from being considered for OfficeMax

employment sometime in the future.  *See* **Exhibit 2**, Richardson Depo. at pp. 93-95.

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND
COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 66

Additionally, OfficeMax's own reorganization materials stated that OfficeMax would fill

open positions from outside the company only after it had "determined that there are no

internal applicants who can fill the position."  *See* **Exhibit 12**, Reorganization Frequently

Asked Questions at ¶ 19.

25.     At the time of the reorganization, no one told Ms. Francis that she would not

be considered for any future employment.  *See* **Exhibit 1**, Francis Depo. at pp. 74-75.

Instead, she was told by her manager that she was doing well and that she "deserved a big

raise." *See* **Exhibit 1**, Francis Depo. at pp. 74-75.  After the termination, Ms. Prentice

reviewed the job requirements for Assistant Store Manager, Merchandise Assistant

Manager, and Store Associate; determined that she was qualified for the positions; and

applied for all three positions. *See* **Exhibit 1**, Francis Depo. at pp. 99-102.  She did not

receive an interview for any of the positions.  *See* **Exhibit 1**, Francis Depo. at pp. 99-102.

OfficeMax, in its computer system, also noted that Ms. Francis was qualified to hold the

Assistant Store Manager position – the highest position for which she applied.  *See*

**Exhibit 16**, Francis Entry.

26.     At the time of reorganization, no one at OfficeMax told Mr. Prentice that his

2007 performance review would be used in determining whether he could reapply for a new

position.  *See* **Exhibit 4**, Prentice Depo. at p. 94.  After reorganization, Mr. Prentice applied

for Store Operations Manager and the Furniture Specialist.  *See* **Exhibit 4**, Prentice Depo.

at p. 97.  He was called for an interview, and the OfficeMax personnel who interviewed him

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND
COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 67

told him that they would call him shortly because they were "excited to have somebody

back with the experience" of the store operations.  *See* **Exhibit 4**, Prentice Depo. at pp.

103-106; *see also* **Exhibit 15**, Emails regarding Mr. Prentice's Interview ("We would like to

re-hire associate Benjamin [Prentice] into the position of Supervisor of Store Operations.

What rate can I offer him?").  OfficeMax, in its computer system, noted that Mr. Prentice

was qualified to hold positions for which he applied.  *See* **Exhibit 17**, Prentice Entry.  He

heard nothing more about the position (**Exhibit 4**, Prentice Depo. at pp. 117-118), but

during the litigation, Ms. Bryan testified that Ms. Ramirez told her that the reason Mr.

Prentice was not selected was because he requested a higher salary.  *See* **Exhibit 6**,

Bryan Depo. at p. 72.  Ms. Ramirez denied having any knowledge as to why Mr. Prentice

was not selected for any post-reorganization position. *See* **Exhibit 10**, Ramirez Depo at

p. 61.  Further, OfficeMax never discussed any salary request with Mr. Prentice in his

interview. *See, generally,* **Exhibit 4**, Prentice Depo.

27.     Ms. Bynum testified that she encouraged Sharika Dubose, an African-

American Supervisor, to reapply for one of the new positions, but she declined.  *See*

**Exhibit 3**, Bynum Depo. at p. 114.  No one from corporate encouraged Ms. Dubose to

reapply for the position.  *See* **Exhibit 3**, Bynum Depo. at p. 114.

28.     OfficeMax corporate personnel treated Mary Margaret McMichael, the only

Caucasian who was reorganized, differently.  "Corporate," perhaps Rafael Rivera, asked

Ms. Bynum to "call Marty at home and tell her to reapply when she had already made it

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND**
**COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO**
**MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 68

clear to me that she did not want to come back.  They continued to call the store and have

me call her and ask her to come and reapply."  *See* **Exhibit 3**, Bynum Depo. at p. 114.

29.    OfficeMax hired two Caucasian males, Seth Wilcoxon and Stephen Schawl,

immediately after the reorganization to do supervisor-level duties.  *See* **Exhibit 3**,

Bynum Depo. at pp. 116-117. OfficeMax paid Seth Wilcoxon, the Merchandise Assistant

Manager, $18.27 per hour for his work.  *See* **Exhibit 18**, Employee Records of Post-

Reorganization Employees at p. OMX 001873 – 1877.  OfficeMax has not produced

Mr. Schawl's pay records or identified exactly which position Mr. Schawl held, but

he served as an Assistant Manager, and he interviewed Mr. Prentice post-reorganization.

*See* **Exhibit 5**, Flores Depo. at pp. 43-46.    OfficeMax also hired Kelly Truelove, a

Caucasian woman, to work at the supervisor level.   *See* **Exhibit 3**, Bynum Depo. at

pp. 117-118. For her work as Merchandise Assistant Manager, OfficeMax paid

Ms. Truelove $19.23 per hour. *See* **Exhibit 18**, Employee Records of Post-Reorganization

Employees at pp. OMX 001868-1872.

30.    From the date of the restructure, when the supervisors were terminated,

until August 15, 2008, no one fulfilled the position of Furniture Specialist (a job for

which Mr. Prentice applied).  *See* **Exhibit 6**, Bryan Depo. at p. 99.  But, on August 15,

2008, OfficeMax hired Miguel Antonio, a Hispanic, for the position.  *See* **Exhibit 6**, Bryan

Depo. at p. 99.  For his work as Furniture Specialist, OfficeMax paid Mr. Antonio $9.50 per

hour.   *See* **Exhibit 18**, Employee Records of Post-Reorganization Employees at

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND
COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 69

pp. OMX 001878-1881.   OfficeMax hired Michele Olson, a Caucasian woman, for the

Store Operations Supervisor Position on October 15, 2008, and paid her $13.00 per

hour. *See* **Exhibit 18**, Employee Records of Post-Reorganization Employees at

pp. OMX 001882-1886.   Finally, OfficeMax produced the pay records of Alicia Gilbert,

a Caucasian woman who worked as a store associate (a non-supervisory position),

which shows that OfficeMax paid her $7.90 per hour.  *See* **Exhibit 18**, Employee Records

of Post-Reorganization Employees at pp. OMX 001887-1891.

      31.    Immediately after reorganization until permanent hires were made, OfficeMax,

in part, staffed the St. Croix store with white and Hispanic employees from other OfficeMax

stores. *See* **Exhibit 5**, Flores Depo. at pp. 69-77; **Exhibit 4**, Prentice Depo. at pp. 90, 103,

107-109 (testifying that when he visited the store post-reorganization, all he saw were white

and Hispanic employees); **Exhibit 1**, Francis Depo. at pp. 51-52 (also testifying that when

she visited the store post-reorganization, all she saw were white and Hispanic employees).

OfficeMax paid for those employees' airfare, hotel, and transportation.  *See id.*  This

practice of bringing in employees from off-island was "very expensive."  *See* **Exhibit 5**,

Flores Depo. at p. 77.

      32.    During litigation, Plaintiffs hired Caren Goldberg, Ph.D., who provided an

expert report in this matter.   *See generally* **Exhibit 11**, Expert Report of Caren B.

Goldberg, Ph.D. ("Goldberg report").  Ms. Goldberg's report is incorporated in its entirety

into this paragraph.   As is demonstrated by her *curriculum vitae* and her report,

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND
COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 70

Dr. Goldberg is a professor who has taught human resources for over a decade to undergraduate and graduate level students.  *See* **Exhibit 11**, Goldberg report at p. 1. She has authored over 50 articles for peer-reviewed journals and conferences, and over 40 of those articles deal with diversity or harassment.  *See* **Exhibit 11**, Goldberg report at p. 1. Dr. Goldberg explains that OfficeMax's business practices were not reasonable in this case.  *See generally* **Exhibit 11**, Goldberg report.  During the time Plaintiffs were employed at OfficeMax, Plaintiffs were subjected to unfair human resources practices including:

> Hourly employees were evaluated on and received corrective actions for store-wide issues that were beyond their control;

> Assistant Managers were able to issue corrective actions without Store Manager approval;

> Unsigned and undated corrective actions were permitted to be placed in employee personnel files;

> Largely blank (and unsigned by anyone) performance appraisals were allowed to be placed in employee personnel files;

> When errors were noted in performance appraisals, they were not corrected;

> When pay inequities were identified and brought to upper management's attention, they were never rectified;

> When progressive discipline wasn't followed, there were no repercussions;

> When eligible employees applied for new positions, they were not considered;

> Before the reorganization, job descriptions bore little resemblance to the work being performed;

> Meetings whereby store managers were apprised of any developments were either conducted in Spanish or excluded English-speaking store managers altogether; and

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND
COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 71

> As part of the reorganization, "new" positions were created that
> were nearly identical to jobs that were being eliminated

33.     After losing her position at OfficeMax, Sophia Francis suffered from severe

emotional distress.   This emotional distress was evidenced by Francis' weight gain,

headaches, sleeplessness, higher blood pressure, anger, and a change in her demeanor.

*See* **Exhibit 1**, Francis Depo. at pp. 115:10 - 118:24. Ms. Francis takes Procardia for her

increased blood pressure and severe headaches as a result of her termination from

OfficeMax.  *See* **Exhibit 1**, Francis Depo. at pp. 9-10.  She must also take Propanolol and

Cozaar for increased blood pressure that resulted after her termination from OfficeMax.

*See* **Exhibit 1**, Francis Depo. at pp. 9-10.  Ms. Francis's regular, clinic physician increased

the dosage for her hypertension medication immediately after OfficeMax fired her.  *See*

**Exhibit 1**, Francis Depo. at p. 116.  In approximately August 2008, the doctor noted that

the hypertension was getting higher, and suggested that Ms. Francis be hospitalized for her

hypertension.  *See* **Exhibit 1**, Francis Depo. at pp. 116-117.   He then prescribed her

additional high blood pressure medication.  *See* **Exhibit 1**, Francis Depo. at pp. 116- 117.

Her physician prescribed her Restoril for her sleeplessness that was caused by her

termination.  *See* **Exhibit 1**, Francis Depo. at pp. 116-117.  He also prescribed her Fioricet

for her debilitating headaches.  *See* **Exhibit 1**, Francis Depo. at p. 117.  Ms. Francis sought

the assistance of her regular physician for her depression, which manifested itself

in sleeplessness.  *See* **Exhibit 1**, Francis Depo. at p. 13.  For this symptom, Dr. Connell at

the Charles Harwood Clinic prescribed Restoril.  *See* **Exhibit 1**, Francis Depo. at pp. 13-14.

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND**
**COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO**
**MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 72

In addition, Ms. Francis's family complained that she was depressed, grouchy, and sour. *See* **Exhibit 1**, Francis Depo. at p. 14.  Ms. Francis's friends, including Awilda Ramirez, also noted the change in her, and asked why Ms. Francis was not calling them anymore. *See* **Exhibit 1**, Francis Depo. at p. 14.

34.    Because of his treatment by OfficeMax, Benjamin Prentice also suffered from severe emotional distress.  Prentice's emotional distress was evidenced by headaches, anxiety, depression, mood changes and sleeplessness.  *See* **Exhibit 4**, Prentice Depo. at pp. 149:5 - 150:14.  Prentice took Fioricet, a prescription medication, for his headaches.  *Id.* at p. 152:6 to 152:24.  He also took Xanax for anxiety and depression. *See* **Exhibit 4**, Prentice Depo. at pp. 151-152.

Plaintiffs rely on the above stated facts and the accompanying Memorandum of Law in support of their opposition to Summary Judgment.

Prentice, Benjamin & Sophia Francis v. OfficeMax North America, Inc. et al.
**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND**
**COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO**
**MOTION FOR SUMMARY JUDGMENT OF OFFICEMAX NORTH AMERICA, INC**
Page 73

RESPECTFULLY SUBMITTED,

LAW OFFICES OF ROHN AND CARPENTER, LLC
Attorneys for Plaintiff

DATED: June 6, 2011                          BY:   s/ *Lee J. Rohn*
                                                   Lee J. Rohn, Esq.
                                                   VI Bar No. 52
                                                   1101 King Street
                                                   Christiansted, St. Croix
                                                   U.S. Virgin Islands 00820
                                                   Telephone: (340) 778-8855
                                                   Fax: (340) 773-2954

## CERTIFICATE OF SERVICE

**THIS IS TO CERTIFY** that on June 6, 2011, I electronically filed the foregoing with the Clerk of the court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Micol L. Morgan, Esquire
Ogletree, Deakins, Nash, Smoak & Stewart
The Tunick Bldg.
1336 Beltjen Road, Suite 201
St. Thomas, VI  00802
     Attorney For: Office Max North America, Inc., Office Max, Inc.

BY:   s/ *Lee J. Rohn*        (dr)