**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | | |
|---|---|---|
| BENJAMIN PRENTICE AND SOPHIA FRANCIS, | ) ) ) | No. 9-5 |
| Plaintiffs, | | |
| v. | | |
| OFFICEMAX NORTH AMERICA, | | |
| Defendant. | | |

**OPINION AND ORDER**

**SYNOPSIS**

In this case, Plaintiffs, both Black West Indian, claim that Defendant, their former employer, discriminated against them on the basis of race, color, and national origin, in violation of Title VII, 42 U.S.C. § 2000e-2, and 42 U.S.C. § 1981.  They also bring state law claims of discrimination pursuant to 10 V.I.C  §§ 1-10 and 62; breach of the duty of good faith and fair dealing; wrongful discharge; and intentional or negligent infliction of emotional distress.  They seek punitive and compensatory damages.

According to Plaintiffs' characterization of the Complaint, they "claim that OfficeMax has provided 'disparate treatment' to Plaintiffs based on their race, color, and national origin." Although Plaintiffs allege several instances of discrimination, their claims stem primarily from a nationwide reorganization of Defendant's stores.  The reorganization eliminated nearly 4,400 positions, including the Logistics Supervisor, Operations Supervisor, and Sales Supervisor positions held by Plaintiffs during their employment, and 1,300 employees across the nation. The reorganization was a company-wide initiative that changed Defendant's staffing model in

1

more than 950 stores.  The duties of five eliminated positions were, at least in part, encompassed by five post-reorganization positions bearing new titles.   Under the terms of the reorganization, terminated employees with a final written warning within six months of the reorganization were not eligible to be considered for a post-reorganization position during the reorganization process. Ms. Francis had a disqualifying warning, and Mr. Prentice was reported as having a disqualifying warning, although none appears in his personnel file.  Eventually, both Plaintiffs applied for post-reorganization positions with Defendant, but were not hired.   It is undisputed that both black and white employees were terminated as a result of the restructuring, and that black employees were hired post-reorganization.

Before the Court is Defendant's motion for summary judgment.  I have carefully considered the entirety of the record, including both parties' lengthy statements of fact, all exhibits thereto, and the submitted briefs.   In this case, many facts were thrown at the wall, but very few of them stick.   For the following reasons, the Motion will be granted in part and denied in part.   Moreover, because I will enter judgment on Plaintiffs' federal claims, I will relinquish jurisdiction over the Plaintiffs' remaining state claims.[1]

## OPINION

## I. SUMMARY JUDGMENT STANDARDS

Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).   In considering a motion for summary judgment, the Court must examine the facts in a light most favorable to the party opposing the motion.  International Raw Materials, Ltd. V. Stauffer Chem . Co., 898 F. 2d 946, 949 (3d Cir. 1990).  The moving party

---

[1] For that reason, Defendant's pending Motion to disqualify Plaintiffs' counsel will be denied, without prejudice.

bears the burden of demonstrating the absence of any genuine issues of material fact.  United States v. Onmicare, Inc., 382 F. 3d 432 (3d Cir. 2004).

Rule 56, however, mandates the entry of judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.  Celotex Corp. v. Cattrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 265 (1986).  The sum of the affirmative evidence to be presented by the non-moving party must be such that a reasonable jury could find in its favor; it cannot simply reiterate unsupported assertions, conclusory allegations, or suspicious beliefs. Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995); Saldana v. Kmart Corp., 260 F.3d 228, 232, 43 V.I. 361 (3d Cir. 2001). Importantly, "if the non-movant's evidence is merely speculative, conclusory, 'or is not significantly probative, summary judgment may be granted.'" Raczkowski v. Empire Kosher Poultry, 185 Fed. Appx. 117, 118 (3d Cir. 2006) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).[2]

---

[2]Pursuant to D.V.I. Local Rule 56.1,  a respondent to a summary judgment motion, if demonstrating that a fact is disputed, "shall affix to the response copies of, and cite to, the precise portions of the record relied upon as evidence of each material fact." Merely stating that a fact is "disputed," without citing to a pertinent portion of the record, does not make it so.  Facts referred to in the body of the Opinion are undisputed unless otherwise indicated.

Moreover, certain facts are not relied on in today's Opinion, because I have deemed them immaterial, mischaracterized, or otherwise not properly considered on summary judgment.  For example, Plaintiffs refer to testimony that the store manager complained that teleconferences with corporate headquarters were conducted in Spanish, or that Defendant's headquarters discriminated against the St. Croix store by sometimes communicating with the store in Spanish, or Plaintiff's feeling that Defendant did not hire many local people.  This litigation does not center on language or geographic location.  I am aware that linguistic characteristics may be related to national origin, such as when language restrictions are used to discriminate, as with an "English-only" rule.  Cf. Gutierrez v. Municipal Court of Southeast Judicial Dist., 861 F.2d 1187 (Kozinski, J., dissenting) (discussing language and discrimination). That is patently not the case at bar, in which Plaintiffs attempt to imply that Defendant somehow demonstrated a favorable leaning toward those who speak Spanish.  This supposed implication is far too remote from the Plaintiffs' claims in this case to bear on the propriety of judgment.  In addition, several pieces of evidence to which Plaintiffs point constitute hearsay, which are not properly considered on summary judgment.  See Smith v. City of Allentown, 589 F.3d 684, 693 (3d Cir. 2009).  Similarly, I note that counsel's unsupported parentheticals -- such as the one purporting to explain the common usage of the word "local" -- are not facts properly considered on summary judgment.

## II. DEFENDANT'S MOTION

### A. Implied covenant of good faith and fair dealing

I first address Defendant's contention that Plaintiffs cannot sustain their claims based on the implied covenant of good faith and fair dealing.

Initially, Defendant argues that the lack of an employment contract is fatal to Plaintiffs' claim.  Although the law is unsettled, it has been held that "[t]he implied covenant of good faith and fair dealing applies to [unwritten] at-will employment contracts in the Virgin Islands." Smith v. V.I. Water & Power Auth., No. 4-48, 2008 U.S. Dist. LEXIS 95852, at *24 (D.V.I. Nov. 24, 2008).[3]  "The covenant of good faith and fair dealing in employment matters serves to protect the integrity of all of the promises made by the parties to the agreement setting forth the terms and conditions of employment. … A breach of such a covenant therefore constitutes a breach of an obligation created by the contract rather than breach of an obligation arising independently from the contract."  Fraser v. Kmart Corp., No. 5-129, 2009 U.S. Dist. LEXIS 35253, at *43 (D.V.I. Apr. 23, 2009).

Defendant also argues that Plaintiffs' prima facie case otherwise fails, because they cannot show that Defendant engaged in the required type of conduct.  In order to state a claim for breach of the implied covenant, a plaintiff must allege that in the performance of the contract, the opposing party "engaged in conduct that was fraudulent, deceitful, or otherwise inconsistent with the purpose of the agreement or the reasonable expectations of the parties."  Wilson v. V.I. Water

---

[3] The Supreme Court of the Virgin Islands has yet to adopt this approach:

> [T]he Supreme Court of the Virgin Islands has not yet addressed the issue of whether an at-will employment agreement gives rise to a contractual duty of good faith and fair dealing. Additionally, the Court notes that a tension exists between the two doctrines insofar as the implied covenant imposes a duty of good faith and fair dealing on an employer who intended to retain total discretion over his or her employment relationships.

Fraser, 2009 U.S. Dist. LEXIS 35253, at *50-51.

& Power Auth., No. 7-24, 2010 U.S. Dist. LEXIS 129229, at *29 (D.V.I. Dec. 7, 2010).  In other words, they must prove acts by the defendant "that amount to fraud, deceit, or misrepresentation."  Smith, 2008 U.S. Dist. LEXIS 95852, at *14.  In this case, a genuine issue remains regarding Plaintiffs' claim.  For example, there is evidence that Mr. Prentice was reported as having a disqualifying written warning, when no such warning appears in his file.  That discrepancy remains largely unexplained.  Viewing the evidence according to applicable standards, I cannot find as a matter of law that Plaintiffs are unable to demonstrate deceit or misrepresentation.   Thus, the Motion will be denied to that extent.

### B. Wrongful Discharge

Next, I address Defendant's motion for judgment on Plaintiffs' claims for wrongful discharge under the Virgin Islands Wrongful Discharge Act ("WDA"), 24 V.I.C. § 76(a).  Defendant argues that the WDA is preempted by the federal law; and that the WDA excepts terminations, such as this one, resulting from a cutback in the workforce due to economic hardship.[4]

Under the WDA, an employer may dismiss any employee for a variety of listed reasons.  When raising a WDA claim, Plaintiff carries the initial burden of establishing a prima facie case of wrongful termination.  At that point, a presumption of wrongful discharge arises, and the burden shifts to the employer to articulate a legitimate, statutorily approved reason for the discharge.  Rajbahadoorsingh v. Chase Manhattan Bank, 168 F. Supp. 2d 496, 504-05 (D.V.I. 2001).  The employer's rebuttal is limited to those reasons permitted by statute.  Id. at  505.  Subsequently, the burden shifts back to the employee to demonstrate that the proffered reason is pretextual.  Id.

---

[4] Defendant does not move for judgment on the WDA claims on any other grounds.  My holding today is limited to denying judgment on grounds of preemption and economic hardship pursuant to Section 76(c), due to insufficient information to make a conclusive determination; I make no finding that the WDA claims are otherwise viable.

In this case, Defendant has proffered that the terminations resulted from a "general cutback in the work force due to economic hardship," which is permitted by the WDA.  4 V.I.C. § 76. Certainly, it is undisputed that Defendant engaged in a company-wide reorganization of its workforce, and a change in the staffing model.  It is less clear, however, whether this reorganization constituted a "cutback in the workforce," or whether it was "due to economic hardship."  For example, although several positions were eliminated, there is no evidence regarding whether the reorganization resulted in fewer employees overall, post-reorganization. Moreover, there is a dearth of case law regarding what constitutes this type of statutorily-approved "cutback."  Additionally, although it is undisputed that the reorganization bore some relationship to lowering costs, I cannot conclude that the some element of economic motivation automatically constitutes "economic hardship" within the meaning of the statute.  Indeed, to fall within this exception, an employer must show some meaningful evidence of its financial condition. Island Block Corp. v. Dep't of Labor, No. 98-114, 2001 U.S. Dist. LEXIS 16612, at *4 (D.V.I. July 23, 2001).[5]  Given this lack of clarity, applicable standards preclude the entry of judgment on these grounds.

Defendant also asserts entitlement to judgment on preemption grounds.  The WDA, as applied to supervisory employees, is preempted by the National Labor Relations Act ("NLRA"), 29 U.S.C. § 152.  Lue-Martin v. March Grp. LLP, 379 Fed. Appx. 190, 193 (3d Cir. 2010). Because the term "supervisor" is not defined by the WDA, courts look to the definition of that term in the NLRA.  Fraser, 2009 U.S. Dist. LEXIS 35253, at *31.  The NLRA defines the term "supervisor" to include "any individual having authority, in the interest of the employer, to . . . assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their

---

[5] In Island Block, the exception was not applied when an alleged cutback resulted in a decrease in the number of employees from 47 to 43-44 over time, and the employer "presented no evidence that it suffered a financial loss or any meaningful evidence of its economic status."  Island Block, 2001 U.S. Dist. LEXIS 16612, at *4.

grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment." 29 U.S.C. § 152(11).  An employee need only perform one of the listed supervisory functions to qualify as a supervisory employee.  See N.L.R.B. v. Health Care & Ret. Corp. of Am., 511 U.S. 571, 573-74, 114 S. Ct. 1778, 128 L. Ed. 2d 586 (1994).

In this case, it is not clear that Plaintiffs were both supervisory employees.  Mr. Prentice testified that he assigned other employees tasks, such as assigning positions on the sales floor -- he also, however, testified that the schedule already outlined what most people would do.  The nature and extent of his responsibility, however, and whether it required the use of independent judgment, is unclear in the record.  Ms. Francis testified that she would direct store associates regarding planograms, and assign store counts.  As with Mr. Prentice, however, the evidence does not conclusively establish the nature and extent of her independent responsibility.  In sum, the extent to which Plaintiff exercised the use of independent judgment in assigning the tasks is not altogether clear; likewise, it is unclear whether the duties were "merely routine."  As I must view the evidence in a light most favorable to Plaintiffs, I cannot, at this time, determine that they are supervisory employees as a matter of law.  For these reasons, the motion for summary judgment on those claims will be denied.

### C. Intentional Infliction of Emotional Distress

Next, I reach Defendant's Motion for judgment on Plaintiffs' claim for intentional infliction of emotional distress.  A claim for intentional infliction of emotional distress lies for conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Restatement (Second) of Torts § 46 cmt. d (1965); see also Claytor v. Chenay Bay

7

Beach Resort, 79 F. Supp. 2d 577, 583 (D.V.I. 2000).   As a threshold matter, it is the court's role to determine if the defendant's conduct is so extreme as to allow recovery. Cox v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir. 1988).

Although not unprecedented, "it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." Id. at 395.[6]  Indeed, generally speaking, a party's conduct in connection with an employment termination does not support a claim for intentional infliction of emotional distress.  Krochalis v. Insurance Co. of North America, 629 F. Supp. 1360, 1373 (E.D. Pa. 1985).  As a matter of law, there is absolutely nothing in the present record suggesting that Defendant's conduct with respect to these Plaintiffs, at any stage during their employment, was so extreme and outrageous as to sustain a claim for intentional infliction of emotional distress.   Judgment will be granted accordingly.

### D.  Negligent Infliction of Emotional Distress

Defendant also argues that it is entitled to judgment as a matter of law on Plaintiffs' claim for negligent infliction of emotional distress.  In order to state such a claim, a plaintiff must "demonstrate that he suffered a physical injury as a result of the defendants' actions, [and] also that it was reasonably foreseeable that defendants' actions would result in …injuries." Anderson v. Gov't of the V.I., 180 F.R.D. 284, 287 (D.V.I. 1998).  Intentional conduct, such as terminating or demoting an employee, cannot serve as the basis for a claim of negligent infliction of emotional distress.  Smith, 2008 U.S. Dist. LEXIS 95852, at **29-30.  Moreover, to prevail, plaintiff must aver that Defendant "should have realized its conduct carried an unreasonable risk of causing [physical] injury." Id. at *29.

---

[6] Although Cox addressed Pennsylvania law, the same scarcity appears in Virgin Island cases.

> The relevant inquiry for the foreseeability element of a negligent infliction of emotional distress claim is whether the person who caused the distress "should have realized that his conduct involved an unreasonable risk of causing the distress…and … from facts known to him should have realized that the distress, if it were caused, might result in illness or bodily harm."

Frorup-Alie v. V.I. Hous. Fin. Auth., No. 00-86, 2004 U.S. Dist. LEXIS 9084, at *18 (D.V.I. Mar. 12, 2004) (quoting Anderson v. Government of Virgin Islands, 180 F.R.D. 284 (D.V.I. 1998)).

In this case, Plaintiffs allege intentional employment actions, such as termination, failure to hire, job transfers, performance reviews, and disciplinary actions, that cannot form the basis of a claim for negligent infliction of emotional distress.  To the extent that the alleged actions may be deemed negligent rather than intentional, however, the element of foreseeable physical harm is patently absent.   No reasonable jury could conclude that Defendant should have been aware that its employment actions carried an unreasonable or foreseeable risk of causing distress resulting in illness or bodily harm.   In addition, Plaintiffs cite to no cases, and I find no such cases, permitting a negligent infliction claim to move forward under circumstances such as those presented here.   Accordingly, Defendant is entitled to judgment in its favor on this claim.

### E.  Discrimination[7]

---

[7] The unwieldy manner in which Plaintiff's factual allegations and claims have developed merits a lengthy aside. The Complaint itself broadly alleges a "pattern and practice of discrimination in…pay, benefits, job assignments, promotions, hiring, and termination."  It further alleges that Plaintiffs were discriminated against in their "hire,…transfer, [and] treatment."  The Complaint's factual allegations regarding discrimination, as regards Plaintiff Prentice, are limited to allegations that he received more difficult job assignments, and Defendant failed to properly

### 1. **McDonnell Douglas**

The parties agree that Plaintiffs' federal and state discrimination claims are analyzed under the burden-shifting scheme of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).  Under that scheme, a plaintiff bears the <u>prima facie</u> burden of demonstrating that he suffered an adverse employment action "under circumstances that give rise to an inference of unlawful discrimination."   <u>Greenawalt v. Clarion County</u>, No. 11-2422, 2012 U.S. App. LEXIS 1696, at **5 (3d Cir. Jan. 30, 2012).

If the plaintiff meets her <u>prima facie</u> case, the burden of production shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for its conduct.  <u>McDonnell Douglas</u>, 411 U.S. at 802. An employer satisfies its burden of production by introducing evidence that would permit the conclusion that there was a nondiscriminatory reason for its actions. <u>Fuentes v. Perskie</u>, 32 F.3d 759, 763 (3d Cir. 1994). The employer need not prove that the tendered reason actually motivated its behavior, and the Court must accept the proffer without measuring its credibility. <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 509, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993); <u>Texas Dept. Of Comm. Affairs v. Burdine</u>, 450 U.S. 248, 253, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981).

Once an employer presents evidence of a legitimate reason for its actions, the burden shifts back to Plaintiff to show that the proffered reason is a pretext for discrimination.

---

investigate his complaints thereof, and that he received a poor evaluation in 2007.  Regarding Plaintiff Francis, specific factual allegations involve only the lack of a pay raise, and unfair discipline in 2008.   Additionally, both Plaintiffs aver that they were terminated based on a false claim of reduction in force, and were replaced by white and Puerto Rican employees at a higher salary and greater benefits.  As the case progressed, however, it appears that certain claims dropped from focus, and others rose to the fore or made a novel appearance.  As reflected in the parties' shifting attempts to characterize Plaintiffs' claims, the intended bases for independent claims -- as opposed to events relied on solely as evidence of discrimination -- continue to evade conclusive definition.  Neither the Court nor Defendant bears the burden of winnowing through Plaintiffs' voluminous allegations to determine every possible theory on which Plaintiff might or might not elect to proceed.   Accordingly, today's Opinion considers the evidence as a whole, and whether it suffices to overcome judgment either in terms of Plaintiffs' <u>prima facie</u> case, or pretext.

Iadimarco v. Runyon, 190 F.3d 151, 158 (3d Cir. 1999). To do so, a plaintiff must submit evidence from which a reasonable fact finder could either disbelieve the employer's articulated legitimate reasons; or conclude that discrimination was more likely than not a motivating or determinative cause of the employer's action. See Fuentes, 32 F.3d at 762. "Proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147, 147 L. Ed. 2d 105, 120 S. Ct. 2097 (2000) (quoting St. Mary's Honor Center v. Hicks, 509 U.S. 502, 524, 125 L. Ed. 2d 407, 113 S. Ct. 2742 (1993)).

Although it is permissible for the trier of fact to infer discrimination from the untruth of the employer's explanation, "'it is not enough . . . to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination.'" Id. (quoting Hicks, 509 U.S. at 519). Therefore, "[t]o discredit the employer's proffered reason… the plaintiff cannot show that the employer's decision was wrong or mistaken since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent." Fuentes, 32 F.3d at 765.

> [A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated….Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory….Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly  may be considered on a motion for judgment as a matter of law.
>
> Reeves, 530 U.S. at 148.

At base, "[d]ifferential treatment is, of course, the <u>sine qua non</u> of a discrimination claim. Despite the burden-shifting paradigm at play in such a case, the ultimate burden of proving intentional discrimination rests, at all times, with the plaintiff." <u>Reynolds v. Port Authority</u>, No. 8-268, 2009 U.S. Dist. LEXIS 54760, at *27 (W.D. Pa. June 6, 2009). With that in mind, "we do not look at each incident in isolation; rather, we examine the 'overall [employment] scenario.'" <u>Aman v. Cort Furniture Rental Corp.</u>, 85 F.3d 1074, 1083 (3d Cir. 1996).

## 2. Differential Treatment

Because Plaintiffs characterize their claims as resting on disparate treatment, I separately discuss the principles applicable in that context. "In a disparate treatment claim,…a plaintiff must establish a <u>prima facie</u> case by presenting sufficient evidence to allow a factfinder to conclude that the defendant treated some people less favorably than others based on impermissible considerations." <u>Grace v. Starwood Hotels & Resorts Worldwide, Inc.</u>, No. 6-1203, 2008 U.S. Dist. LEXIS 10951, at *12 (W.D. Pa. Feb. 14, 2008). The <u>prima facie</u> requirement of "circumstances that give rise to an inference of unlawful discrimination," in this context, may include the favorable treatment of similarly situated people outside of the plaintiff's protected class. <u>Greenawalt</u>, 2012 U.S. App. LEXIS 1696, at **5-6. Likewise, such comparator evidence may be used to establish pretext. <u>Hodczak v. Latrobe Specialty Steel Co.</u>, No. 11-1085, 2011 U.S. App. LEXIS 23052, at *5 (3d Cir. Nov. 17, 2011).

Certainly, "the precise elements of a plaintiff's <u>prima facie</u> case may vary with the particular circumstances." <u>Waldron v. SL Indus., Inc.</u>, 56 F.3d 491, 494 n. 3 (3d Cir. 1995). Thus, while differential treatment is not a wooden requirement, the lack of comparator evidence, and the failure to establish differential treatment, bears on Plaintiffs' <u>prima facie</u> case. <u>See</u>, <u>e.g.</u>,

12

Reynolds v. Port Authority, No. 8-268, 2009 U.S. Dist. LEXIS 54760, at **12-13 n. 6 (W.D. Pa. June 6, 2009); Foxworth v. Pennsylvania State Police, 228 Fed. Appx. 151, 158 (3d Cir. 2007).

Determining whether another employee was "similarly situated" to a plaintiff requires a fact-intensive assessment of factors such as salary, job function, duties, and other factors relevant to the particular workplace. Monaco v. American Gen. Assur. Co., 359 F.3d 296, 305 (3d Cir. 2004).  "Where evidence of allegedly disparate treatment meted out to 'similarly situated' employees outside of the protected class is relied upon, those individuals must 'have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it.'"  Davis v. City of Phila. Water Dep't, 57 Fed. Appx. 90, 92 (3d Cir. 2003).   If he is not "similarly situated," a comparator is of little or no evidentiary value.  Cf., e.g., Lauren W. v. DeFlaminis, 480 F. 3d 259, 269 (3$^d$ Cir. 2007).

Instances of disparate treatment "'need not be perfect replicas, [but] they must closely resemble one another in respect to relevant facts and circumstances.'"  McCullers v. Napolitano, 427 Fed. Appx. 190, 195 (3d Cir. Pa. 2011) (quoting Kosereis v. Rhode Island, 331 F.3d 207, 214 (1st Cir. 2003)).

> Context matters in assessing the factors relevant to the inquiry of whether two employees are similarly situated. In [the context of] workplace disciplinary and/or personnel actions[,] relevant factors include a "showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them."

Id. (quoting Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617-18 (7th Cir. 2000)).

### 3.  Defendant's Motion

Defendant argues that Plaintiffs' discrimination claims, primarily due to lack of comparator evidence, fail at both the prima facie and pretext stages.

Before proceeding to the facts presented, I take note of the facts that are absent -- i.e., evidence regarding appropriate comparators.  This deficiency severely undermines Plaintiffs' prima facie case of discrimination; and, even assuming that the prima facie case is met, it also diminishes their case at the pretext stage.[8]  Previously, in response to the Motion for Summary Judgment, Plaintiffs indicated that they did not have evidence regarding similarly situated employees, due to incomplete discovery from Defendant.   By subsequent Order dated August 15, 2011, I permitted Plaintiffs additional discovery, finding that they were entitled to determine various types of information about comparators.   Following the close of the additional discovery period, Plaintiffs advised the Court that they would not submit any further materials in opposition to summary judgment.

Where Plaintiffs do proffer evidence regarding other employees, they point to absolutely no facts -- such as credentials, work experience, positions held, or the like -- that would permit the conclusion that the other employees referred to were similarly situated to Plaintiffs, or the inference that any alleged disparity resulted from race, color, or national origin discrimination. For example, both Plaintiffs, broadly and generically, testified that they went into the store at some point within weeks after their terminations, and observed unnamed Hispanics and whites working, performing Plaintiffs' former duties.  Plaintiffs have not proffered a shred of additional information about these employees.  Instead, the evidence demonstrates that both black and white employees were terminated as a result of the reorganization, and that not all of the post-

---

[8] Because the prima facie case and pretext inquiries overlap, the Court may consider the same evidence at both stages of the McDonnell-Douglas analysis.  Doe v. C.A.R.S. Protection Plus, Inc., 527 F.3d 358, 370 (3d Cir. 2008). Although I collapse the inquiries here for organization purposes, I assure the parties that I carefully considered all appropriately considered undisputed facts, and cited exhibits, in light of each part the analysis.

reorganization hires were white or Hispanic.[9]   Similarly, Plaintiffs proffer that post-reorganization hires earned more than Plaintiffs earned pre-reorganization.[10]   The record is devoid of evidence, however, that would allow the conclusion that the eventual hires are appropriate comparators.  Indeed, it is undisputed that the post-reorganization positions that encompassed Plaintiffs' duties bore more responsibility than Plaintiffs' pre-reorganization positions.   Accordingly, any disparity in pay does not raise an inference of discrimination.

As regards their pre-reorganization pay, Plaintiffs first point to a pay disparity between Mr. Prentice and Ms. Francis.   Clearly, Plaintiffs share the protected characteristics at issue, and any inequality between them is not relevant to the presence of discrimination based on those characteristics.  They also point to Ms. Francis' testimony that at some unspecified time during her employment, she observed pay logs revealing that unidentified co-workers, who were a different color than she, were paid a greater, but again unspecified, amount of money.  This broad and unsupported testimony, absent further information permitting meaningful comparison, is wholly insufficient to overcome summary judgment.   "[T]he mere fact that a white employee was paid more than a black employee, without evidence in the record to support the conclusion that the two employees were similarly situated or that they performed substantially the same work, is not sufficient to support a prima facie case…." Lewis v. Kinko's, No. 99-3028, 2004 U.S. Dist. LEXIS 6242, at *22 (E.D. Pa. Mar. 31, 2004).

In the absence of clear comparator testimony, Plaintiffs point to other purported evidence of discriminatory intent.  In addition to being infected by the lack of comparator evidence, these

---

[9] It is undisputed that Mary McMichael, a white employee, was terminated along with Plaintiffs; and that Defendant hired Miguel Antonio and Gail Barry, both black, at the St. Croix store after the reorganization.

[10] Mr. Prentice spoke to a taxi driver and learned that he was bringing workers to their lodging.  Plaintiffs point to this as evidence that the post-reorganization workers were treated more favorably, because Plaintiffs were never provided taxi rides home.   It is undisputed that temporary workers were loaned to St. Croix from other store locations following the reorganization.  Those temporary workers received travel and lodging expenses.  In addition to hearsay issues and that the temporary workers -- being temporary-- are not appropriate comparators, there is no evidence that the subsequent permanent hires received any such benefits.

instances simply do not constitute or reflect circumstances that give rise to an inference of illegal discrimination. For example, after the reorganization, Defendant asked a manager to contact a white employee who had been terminated, and ask her to reapply. It is undisputed, however, that Defendant also asked the manager to do the same with a terminated black employee. Moreover, there is no evidence from which to conclude that the white employee thus pursued was similarly situated to Plaintiffs. Neither Plaintiffs nor this Court may selectively focus on Defendant's pursuit of the white employee, and ignore similar positive actions towards another within the protected class. See Simpson v. Kay Jewelers, 142 F.3d 639, 645 (3d Cir. 1998). In any event, the use of a single comparator, in this context, is insufficient to cast doubt on Defendant's explanation. Whitaker v. Holy Family Soc. Servs., 309 Fed. Appx. 654 (3d Cir. 2009); Jafar v. Kings College, No. 04-862, 2006 U.S. Dist. LEXIS 47943, at *18 (M.D. Pa. June 30, 2006).

Plaintiffs also allege that various events in their employment history evidence discrimination. Ms. Francis claims that she was discriminated against when she received a unfair 2008 final written warning, did not receive performance evaluations in 2007 and 2008, and did not receive a requested pay raise. As noted above, Plaintiffs have not identified any pertinent evidence at all regarding other employees, much less similarly situated employees outside of the protected class, who were treated more favorably. Ms. Francis' 2008 warning arose when the store manager told Ms. Francis "not to worry," so Ms. Francis believed that she did not have to call in to work during an absence while her son was sick; store policy, however, required her to do so. In addition, she returned to work a day later than authorized by the medical certification she submitted, in violation of Defendant's attendance policy.

Plaintiffs have not produced evidence that calls these explanations into question, either by evidence that co-workers were treated differently, or otherwise. The evidence to which

Plaintiffs point -- for example, that the store manager who told Plaintiff not to worry disagreed

that Plaintiff should be penalized, because she felt it might be her fault that Plaintiff did not call

into work -- speaks only to the fairness or wisdom of the warning, and not to discriminatory

motive.  Additionally, the mere fact that a white supervisor issued the warning is wholly

insufficient to raise an inference of racial animus.   "Plaintiff may well hold a subjective belief

the discipline that he has received was unfair…But the Court's task here is to evaluate claims of

invidious discrimination -- it 'is not to assess the overall fairness of [the] employer's actions.'"

Hernandez v. Borough of Fort Lee, No. 9-1386, 2010 U.S. Dist. LEXIS 56622, at *20 (D.N.J.

June 8, 2010).  Negligence, innocent error, or incompetence does not constitute discrimination.

See Chiang v. Schafer, No. 2000-04, 2008 U.S. Dist. LEXIS 64654, at *122 (D.V.I. Aug. 20,

2008).[11]  With respect to alleged deviations from store policy, such as the failure to proffer

evaluations, Plaintiffs fail either to explain how the alleged failures indicate discrimination, or

call explanatory evidence -- such as the computer system that problematically auto-populates

appraisals, and is used for evaluations -- into question.[12]

　　　　As regards Mr. Prentice, Plaintiffs decry the fact that Mr. Prentice felt he was "always"

given tasks of physical labor, that he was transferred from one position to another, and that he

received an unfair performance appraisal in 2007.   There is no evidence at all regarding the

allegations of physical labor, and whether any other employees, of any race or national origin,

received similar assignments.  With respect to the performance appraisal, Mr. Prentice received a

---

[11] The fact that Ms. Francis did not receive a pay raise, and that she did not receive certain evaluations, suffer from similar infirmities as evidence of discriminatory intent.  Ms. Francis' manager requested a raise for her, but the request was rejected by the district manager.  There is no evidence that any other similarly situated persons were treated differently, and no other grounds for concluding that the rejection was the result of racial or other illegal animus.

[12] Plaintiff incorrectly asserts that the lack of a 2008 evaluation was used as a reason to discharge Ms. Francis. Defendant does not rely on the 2008 evaluation status either for Ms. Francis' termination or her ineligibility for immediate reapplication, which rested instead on her disciplinary record.  Also, Plaintiffs do not call into question Defendant's explanation that Plaintiff's December 2006 hire date affected her receipt of a 2007 evaluation.

"does not live values" rating for leadership; he testified that he was told that the rating was based on his failure to discipline employees. Although he testified that he was not able to discipline without management approval, it is undisputed that he was able to recommend or request disciplinary action to management. There is no evidence surrounding this performance evaluation that raises the specter of discrimination.

In addition, in May of 2007, Mr. Prentice testified that he was told that he was being transferred from Operations Supervisor to Sales Supervisor because he had not completed OfficeMax University in its entirety, and had to learn more about sales leader and boundless selling. As proof that this move was discriminatory, Plaintiffs point to Mr. Prentice's testimony that another supervisor was permitted to continue to perform her duties, although she had not completed OfficeMax University. Again, however -- assuming that the transfer constituted an adverse employment action -- we are utterly without information regarding that employee, in order to assess her value as a comparator; for example, there is no evidence or suggestion that she also, like Mr. Prentice, had more to learn about sales leader and boundless selling. Indeed, more fundamentally, Plaintiff points to no record evidence that this other employee was non-Black West Indian.[13]

After this instance, Mr. Prentice resumed the duties of his former operations position, but was transferred to a sales position in December of 2007 or January of 2008.[14]  At that time, he observed a light-skinned woman, who he "could see" was Hispanic, perform his duties in operations. Mr. Prentice's manager testified that she thought sales was a better position for

---

[13] Plaintiff's counsel inserts a parenthetical, "(Hispanic)," to describe the other supervisor -- but points to nothing in the record that makes reference to her race, color, or national origin. Again, counsel's parenthetical explanations are not evidence that I may consider on summary judgment.

[14] The record is unclear regarding the chronology of whether Mr. Prentice was actually transferred twice from operations to sales, or whether he merely was temporarily relieved of the cash duties of operations in May, 2007, and then officially transferred to sales only once, in December of 2007. Plaintiffs seem to assert that Mr. Prentice was transferred to sales twice.

him.[15]   Moreover, Defendant presented testimony that before Mr. Prentice was removed from operations duties, an auditor observed store employees and indicated that Mr. Prentice should not be in the operations position he held; he was then transferred to sales.  Plaintiffs simply have not cast Defendant's explanations into doubt, and have not identified any circumstances that raise an inference of discrimination.

Finally, Plaintiffs both claim that Defendant's continuing failure to rehire them, today, is discriminatory.[16]  Defendant has proffered, inter alia, that Ms. Francis was not the best qualified candidate, and that she limited her availability in her application.  As regards Mr. Prentice, Defendant states that he sought a higher salary than it was prepared to pay.  Plaintiffs have simply proffered no evidence that casts this explanation into doubt, otherwise demonstrates that they are pretextual, or occurred under suspicious circumstances. [17]   The fact that Plaintiffs were qualified for the positions does not call these explanations into question in any way.  Whether a court thinks that an employer misjudged a plaintiff's qualifications does not, in itself, make the employer's legitimate reasons unworthy of belief.  Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F. 2d 509, 531 (3d Cir. 1993).  Indeed, a district court may not second-guess the employer's business judgment.  Brewer v. Quaker State Oil Refining Corp., 72 F. 3d 326, 332 (3d Cir.

---

[15] The manager testified, "I truly thought that he was…better suited in sales than in counting the registers.  He was very slow.  The cashiers complained that they got out late at night.  And he just didn't bloom in that position…I tried to place him to his strength, which I thought was the sales position."

[16] It appears that Plaintiff's claim is not premised on Mr. Prentice's erroneously reported final warning, because it is undisputed that Mr. Prentice was, in fact, interviewed for a position after the reorganization.  As discussed in the body of the Opinion, Defendant offered a legitimate explanation for its failure to hire Mr. Prentice in those positions, none of which rest on the erroneous report.  Certainly, as mentioned in connection with Plaintiffs' implied covenant claim, the record is confused regarding the erroneous report.  Nonetheless, negligence or mistake is not sufficient, and there remain absolutely no circumstances that give rise to an inference of discriminatory animus.

[17] Plaintiffs dispute this assertion, stating that Defendant never discussed salary request with Mr. Prentice in his post-reorganization interview.  In support, Plaintiffs direct me to "See, generally, Exhibit 4, Prentice Depo."  Citing to an entire deposition is of little assistance to the Court.  Nonetheless, I read through the portions of Mr. Prentice's deposition relating to his interview.  While there is no mention of a salary discussion, I did not find anything to contradict the fact that such a discussion took place.

1995). Courts are, therefore, to exercise caution when intruding into subjective employment decisions. See Ezold, 983 F. 2d at 527.

## III.  JURISDICTION

A district court may decline to exercise supplemental jurisdiction over a claim if it "has dismissed all claims over which it has original jurisdiction." Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000).  Because I have dismissed Plaintiffs' federal claims, the only claims remaining in this action fall under state law.   Moreover, those claims rest on areas of law that are relatively unsettled, or that involve questions that the state court is better situated to answer. Accordingly, I will relinquish jurisdiction over this matter.  The case will be dismissed, without prejudice to Plaintiffs to refile their claims in state court.    As a result, I will also dismiss the remaining Motion pending in this matter, without prejudice.


## CONCLUSION

In sum, while I empathize with Plaintiffs' palpable sense of disillusionment and mistreatment at the hands of their former employer, the facts that they have amassed in this case amount to no more than speculation regarding discriminatory motive, and no more than error or poor management practices on Defendant's part.   Upon close examination, it is clear that evidence of discriminatory treatment, and discriminatory intent, is utterly absent.

"[T]he factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." Fuentes v. Perskie, 32 F. 3d 759, 765 (3d Cir. 1994).   After combing carefully through the record in this case, it is apparent that there is no evidence from which to infer that Defendant's treatment of Plaintiffs -- albeit possibly unfair, inaccurate, or inappropriate -- was connected to their race, color, or national

origin.   I emphasize that Plaintiffs' claims fail both because there is no evidence that Defendant treated similarly situated persons more favorably, and because, on the record as a whole, there is no suggestion of any causal nexus between any of the challenged employment actions and Plaintiffs' membership in a protected class.   In addition, Plaintiffs' allegations cannot, as a matter of law, support emotional distress claims.   On both sets of claims, Defendant is entitled to judgment as a matter of law.

Although Plaintiffs may not seek redress under discrimination and emotional distress laws, they may still pursue redress.   Because the record does not conclusively demonstrate that Plaintiffs cannot show deceit or misrepresentation, or that they cannot prevail on their WDA claim, Plaintiffs' claims for breach of the duty of good faith and fair dealing and wrongful discharge may proceed.   Although I will dismiss this action, I will do so without prejudice to Plaintiffs to pursue their remaining claims in state court.

An appropriate Order follows.

**ORDER**

AND NOW, this 15th day of March, 2012, it is hereby ORDERED, ADJUDGED, and DECREED that Defendant's Motion for Summary Judgment [126] is GRANTED in part and DENIED in part.   Judgment is hereby entered on Plaintiff's claims for discrimination and emotional distress (Counts I, II, and V).  The Motion is denied as to Plaintiffs' claims for wrongful discharge, breach of the implied covenant of good faith and fair dealing, and punitive damages (Counts III, IV, and VI).  Because the only claims remaining are brought under state law, and for the reasons stated in foregoing Opinion, I hereby relinquish jurisdiction, and this matter is hereby DISMISSED, without prejudice to Plaintiffs to refile their claims in state court.

Likewise, I will not exercise authority over the remaining Motion pending in this matter. Defendant's Motion to Disqualify Counsel [194] is DENIED, without prejudice to Defendant to reassert its request if Plaintiffs refile their action in state court.

BY THE COURT:

/s/Donetta W. Ambrose

Donetta W. Ambrose
Senior Judge, U.S. District Court